No. 94,877

AUDIE DRAGON and JOHN HOWARD, for themselves and all others similarly situated, *Appellants*, v. VANGUARD INDUSTRIES, INC., VANGUARD PIPING SYSTEMS, INC., and VANGUARD PLASTICS, INC., *Appellees*.

144 P.3d 1279

Opinion filed October 27, 2006.

*Rex A. Sharp*, of Gunderson, Sharp & Walke, L.L.P., of Prairie Village, argued the cause, and *Isaac L. Diel*, of Law Offices of Isaac L. Diel, of Bonner Springs, and *David B. Cohen*, of Scarsdale, New York, were with him on the briefs for appellants.

*William H. Seiler, Jr.*, of Vanguard Plastics, Inc., of McPherson, and *Casey R. Law*, of Bremyer & Wise, L.L.C., of McPherson, argued the cause and were on the brief for appellees.

The opinion of the court was delivered by

DAVIS, J.: In *Dragon v. Vanguard Industries, Inc.*, 277 Kan. 776, 89 P.3d 908 (2004) (*Dragon I*), this court reversed a class certification order for plaintiffs seeking damages by reason of allegedly defective pipe manufactured by the defendants Vanguard Industries, Inc., *et al*. We remanded with directions for further findings concerning the prerequisites of class certification. The case is now before us again in almost the same posture, except plaintiffs' interlocutory appeal arises from an order denying class certification.

In 2001, plaintiffs and Georgia residents Audie Dragon and John Howard filed suit on behalf of themselves and a nationwide class of property owners whose property contains polybutylene pipe manufactured from Mitsui resin. Plaintiffs allege this defective product, known as M pipe, was designed, manufactured, advertised, or sold by defendants Vanguard Industries, Inc., Vanguard Piping Systems, Inc., and Vanguard Plastics, Inc.

The First Amended Class Action Petition defined the class as follows:

" 'All persons and entities that own real property or structures and/or improvements to real property in the United States in which there was installed between January 1, 1990 and the present Vanguard polybutylene plumbing containing resin manufactured by Mitsui Plastics, Inc.'

" 'Excluded from the Class are (1) claims for personal injury by the Class Members; and (2) Defendants, and any parent, subsidiary, affiliate, or controlled person of any Defendants, the officers, directors, agents, servants, or employees of the Defendants, and the members of the immediate families of any such person.' "

The first amended petition asserted the following legal theories and causes of action: breach of contract (third-party beneficiary); negligent misrepresentation; strict liability (K.S.A. 60-3301 *et. seq.*); strict advertising liability (§ 402 B of the Restatement [Second] of Torts [1964]); Kansas Consumer Protection Act; Uniform Commercial Code (breach of implied warranty of merchantability and fitness for a particular purpose); res ipsa loquitur and negligence; and equity (accounting, quantum meruit, and unjust enrichment).

On October 8, 2002, the trial court granted the plaintiffs' motion for certification and adopted the class definition set forth above. The trial court denied defendants' motion for reconsideration, but agreed to amend its prior order to include the finding required by K.S.A. 60-2102(b) that the order involved a controlling question of law as to which there was a substantial ground for difference of opinion and an immediate appeal might materially advance the ultimate termination of the litigation. The Court of Appeals granted defendants' application for permission to take an interlocutory appeal, and this court denied plaintiffs' petition for review of that decision. The case was then transferred to this court on the court's own motion pursuant to K.S.A. 20-3018(c).

In the first appeal, this court reversed and remanded for further proceedings on the issue of whether the requested class should be certified, because the trial court had failed to fully determine factual issues relating to the prerequisites for class certification and to rigorously analyze the requirements of commonality, typicality, predominance, and superiority under K.S.A. 2003 Supp. 60-223. *Dragon I*, 277 Kan. at 777. We directed the trial court to give careful consideration to and conduct a rigorous analysis of the pre-

requisites imposed by K.S.A. 2003 Supp. 60-223. Additionally, we found that the trial court erred in determining that it was premature to consider choice of law issues. Pointing out the number of legal theories advanced and variance in the laws of potentially all 50 states, we reversed and remanded for consideration of the choice of law issues as it impacted the prerequisites to class certification under K.S.A. 2003 Supp. 60-223. 277 Kan. at 784-92.

In response to this court's decision, plaintiffs filed a second amended class petition which reduced the number of causes of action to three (breach of express warranty, breach of implied warranty, and consumer protection act claims) and narrowed the class to members in just four states:

" 'All persons and entities that own residential real property or structures in Kansas, Oklahoma, Georgia and South Carolina in which Vanguard polybutylene plumbing containing resin manufactured by Mitsui Plastics Inc. (a/k/a "M" pipe) was installed from July 1, 1992-December 31, 1995.' "

The defendants filed an answer arguing in part that the plaintiffs' "simplification" of the issues failed to simplify the determination of whether class certification is appropriate. They reasoned that the plaintiffs lacked the power to decisively waive later possible reliance on any legal theories simply by failing to specify them in their pleadings, and even if waiver were possible, such a willingness to give up legal theories in return for class certification raises serious questions about due process and the adequacy of representation of the proposed class.

Following oral argument, where the parties presented substantial argument concerning the prerequisites of K.S.A. 2003 Supp. 60-223, including choice of law issues, the district court denied the second amended motion to certify a class action, reasoning:

"In reviewing the First Amended Class Action Petition and the instant Petition, this court has a deep concern over the prerequisites of (b)(3), which was raised by the Defendants in their Response. Is the requested action manageable? *Shutts Executor v. Phillips Petroleum Co.*, 222 Kan. 527, 567 P.2d 1292 (1977). Would it save judicial economy and resources? Would it be superior to other available methods for the fair and efficient adjudication of this controversy? Is it fair to the class members not parties to this adjudication? And, would it impair or impede their ability to protect their interests?

"The First Amended Class Action Petition included a national class of all 50 states. After reversal, the Plaintiffs reduced their claim to four (4) states, Kansas, Oklahoma, Georgia and South Carolina. Originally Plaintiffs alleged breach of contract, negligent misrepresentation, strict liability, strict advertising liability, Kansas Consumer Protection Act violations, Uniform Commercial Code (breach of implied warranty of merchantability and fitness for a particular purpose), res [i]psa loquitor and negligence. After reversal, Plaintiffs reduced their theories to implied warranty of merchantability in Kansas, Oklahoma and South Carolina; breach of express warranty in Kansas, Oklahoma and South Carolina; and Consumer Protection Act violations in all four states. The two Georgia class representatives are not asserting warranty claims under Georgia law.

"Plaintiffs argue that the Second Amended Petition simplifies the legal issues and allows for an easier determination of certification. But, this court has concerns in this stage of the litigation whether Plaintiffs should omit a sizeable number of potential members in other states and waive reliance on other legal theories advanced by Plaintiffs earlier. The adequacy of representation and of due process of law are questioned. It appears that this limitation of states and reduction of theories were materially changed and deleted only to make it easier to get class certification. Plaintiffs' willingness to give up viable theories of relief on behalf of those who will be excluded and particularly those who may have viable claims in negligence concerns the court. Where will they go? Plaintiffs may respond that they may 'opt-out' and bring individual lawsuits. The concept of a class action suit is to adjudicate the claims of the class in an efficient, fair proceeding and to avoid burdening the courts with multiple individual actions. The Court questions whether Plaintiffs' proposed class is 'superior to other available methods. . . '. Theoretically, we could end up with more excluded members filing suit [than] there may be in the class in four states.

"In their Response, Defendants call attention to the Plaintiffs' lack of power to waive later possible reliance on any legal theories simply by failing to specify them in their pleadings . . . . They raise serious questions about the due process of law and the adequacy of the representation. The now unpleaded legal theories may still be asserted at any time, and if so, the court will have to consider them in the choice-of-law analysis. The Defendants contend, regardless of how Plaintiffs craft their pleadings to achieve class certification, this case still remains as a product liability case. This court can envision a complex problem on choice-of-law.

"Based upon the above findings, the court holds that the proposed class action motion is neither fair, efficient nor superior to other available methods, nor would it serve judicial economy with the limited resources of the District Court of McPherson County.

"Plaintiffs have failed to satisfy the prerequisites of maintaining a class action under K.S.A. 60-223(b). Motion to certify class action is denied."

The plaintiffs' application for interlocutory appeal was granted by the Court of Appeals, and we transferred the case to the Kansas Supreme Court on the defendants' motion.

## Discussion

The plaintiffs ask this court to set forth the standard of review for an interlocutory appeal under K.S.A. 2003 Supp. 60-223(f), since this is the first case to be granted interlocutory appeal under the statute. They ask this court to adopt the federal approach to evaluating interlocutory appeals under the similar Federal Rule of Civil Procedure 23(f) and find that the criteria set forth in this approach are met in this case. The defendants counter that this issue is moot, since the interlocutory appeal was granted by the Court of Appeals under K.S.A. 2003 Supp. 60-223(f). Moreover, the defendants do not challenge the Court of Appeals decision granting the interlocutory appeal. We conclude the issue, while important, is moot.

## Standard of Review

" 'Trial [courts] are afforded substantial discretion in determining whether a class should be certified.' [Citation omitted.] . . . ' "[T]he amount and degree of judicial discretion will vary depending on the character of the question presented for determination." ' [Citation omitted.] In general, when a discretionary decision is made 'within the legal standards and takes the proper factors into account in the proper way, the . . . decision is protected even if not wise.' [Citation omitted.] However, '[a]buse is found when the trial court has gone outside the framework of legal standards or statutory limitations, or when it fails to properly consider the factors on that issue given by the higher courts to guide the discretionary determination.' [Citations omitted.]

. . . .

"While the trial court has substantial discretion in determining whether a class should be certified, the provisions of K.S.A. 2003 Supp. 60-223 must be applied and rigorously analyzed." *Dragon I*, 277 Kan. at 779-80.

## Application of our Standard of Review

In *Dragon I*, we set forth the following prerequisites for class certification:

"K.S.A. 2003 Supp. 60-223(a), like its federal counterpart, imposes four requirements applicable to all class actions:

'(a) *Prerequisites to a class action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties

will fairly and adequately protect the interests of the class.' K.S.A. 2003 Supp. 60-223(a).

In abbreviated form, these threshold elements require: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.

"In addition to satisfying these four prerequisites, parties seeking class certification must show that the action is maintainable under K.S.A. 2003 Supp. 60-223(b)(1), (2), or (3). Plaintiffs in this case seek certification under K.S.A. 2003 Supp. 60-223(b)(3). This provision adds two additional prerequisites: common questions of law or fact must 'predominate over any questions affecting only individual members' and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.' " 277 Kan. at 778.

K.S.A. 2003 Supp. 60-223(b)(3) includes a list of factors pertinent to a court's examination of the predominance and superiority requirements:

"(A) The interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

### Contentions of the Parties

The plaintiffs argue the trial court abused its discretion by failing to rigorously analyze the relevant factors under K.S.A. 2003 Supp. 60-223, by failing to consider the choice of law issue, and by considering unasserted claims and nonclass members in denying class certification. They urge this court to analyze all of the K.S.A. 2003 Supp. 60-223 factors, including the choice of law issue, which the trial court did not consider below, and grant class certification.

The defendants respond that the plaintiffs' failure to challenge the inadequacy of the findings of facts and conclusions of law below precludes them from raising the issue on appeal and that the memorandum decision permits meaningful appellate review. They contend the decision was correct because the plaintiffs lacked the power to decisively waive reliance on the dropped legal claims in the second amended petition, the waiver raises serious questions about the due process for and the fairness and adequacy of the representation being afforded to the members of the proposed class, the purported elimination of legal theories was not shown to

benefit prospective class members, the elimination of legal theories failed to simplify choice of law problems, and the plaintiffs failed to satisfy the "black letter" requirements of K.S.A. 2003 Supp. 60-223.

*Analysis*

Generally, a litigant must object to inadequate findings of fact and conclusions of law to give the trial court the opportunity to correct them, and in the absence of an objection, omissions in findings will not be considered on appeal. *Gilkey v. State*, 31 Kan. App. 2d 77, 77-78, 60 P.3d 351, *rev. denied* 275 Kan. 963 (2003). Where no objection is made, this court will presume the trial court found all facts necessary to support its judgment. However, this court may still consider a remand if the lack of specific findings precludes meaningful review. 31 Kan. App. 2d at 78.

K.S.A. 60-252(a) provides in relevant part:

"In all actions tried upon the facts without a jury or with an advisory jury or upon entering summary judgment or involuntary dismissal, the judge shall find, and either orally or in writing state, the controlling facts and the judge's conclusions of law thereon. Judgment shall be entered pursuant to K.S.A. 60-258 and amendments thereto."

Although subsection (b) provides that the party may file a motion with the court to amend or make additional findings within 10 days after entry of judgment, the plaintiffs in this case failed to do so. See K.S.A. 60-252(b).

Supreme Court Rule 165 (2005 Kan. Ct. R. Annot. 217) provides in part: "In all contested matters submitted to a judge without a jury including motions for summary judgment, the judge shall state the controlling facts required by K.S.A. 60-252, and the legal principles controlling the decision."

While nothing in the plain language of K.S.A. 60-252 or Rule 165 indicates that they are applicable to class certification orders, nothing in either rule suggests they should not apply to class certification decisions. We believe that it makes sense to require these Kansas rules to apply to class certification orders, which often involve complex matters, in order to provide meaningful appellate review.

Kansas courts are not the first to grapple with the relationship between class certification orders and the requirement of specific findings of fact. For example, the Western District of Missouri has recently held that it could not find any requirement, by virtue of rule, statute, or case law, that the trial court make findings of fact and conclusions of law supporting its certification. Thus, in the absence of a request for findings of fact and conclusions of law under its similar statute, it concluded the trial court is not required to make findings or conclusions in support of its class certification. *Dale v. Daimler Chrysler Corp.*, 2006 WL 1792414 (Mo. App., unpublished opinion, *rev. denied* August 29, 2006).

Likewise, in *The Money Place, LLC v. Barnes*, 349 Ark. 518, 78 S.W.3d 730 (2002), the Arkansas Supreme Court found that the defendant waived argument that the trial court failed to undertake a rigorous analysis in considering class certification, where the defendant did not request specific findings of fact or file a motion for additional findings after the judgment. However, the Arkansas statute included a specific provision not found in the Kansas statute that " 'findings of fact and conclusions of law are unnecessary on decisions of motions under these Rules,' " and the Arkansas court did not require that the district court engage in a " 'rigorous analysis' " of the certification factors. 349 Ark. at 524-25.

However, in *Consolidated Edison Co. v. Richardson*, 233 F.3d 1376 (Fed. Cir. 2000), the district court provided no reasons for its denial of a class certification order. The appellate court was reluctant to affirm without knowing the trial court's grounds for denial, noting that

"[a]lthough Fed.R.Civ.P. 52 [the federal counterpart to K.S.A. 60-252] does not require it, when the district court is presented with conflicting positions as to how to exercise its discretion in determining whether to certify a class action, sound practice strongly suggests giving the litigants and a reviewing court at least a minimum explanation of the reasons for its decision. [Citation omitted.]" 233 F.3d at 1384.

See *Berry v. Federal Kemper Life Assur. Co.*, 136 N.M. 454, 463 n.1, 99 P.3d 1166 (2004) (expressing a strong preference for district courts to enter formal findings of fact and conclusions of law in support of Rule 23 certification as "[f]indings will make review on

appeal more informed and will force the parties to explicitly address the Rule's requirements").

The plaintiffs in the present appeal did not request further findings of fact and conclusions of law before the trial court. Under these circumstances, this court may assume that the trial court made the necessary findings and conclusions to support its decision. See *Hill v. Farm Bur. Mut. Ins. Co.*, 263 Kan. 703, 706, 952 P.2d 1286 (1998). Thus, any party before the trial court on a class certification who is convinced the trial court has not followed the dictates of *Dragon I* runs the risk of an adverse decision on appeal if that party does not request additional findings and conclusions.

Ultimately, however, the decision to be rendered on appeal is an appellate decision. If the appellate court concludes that the trial court did not engage in a rigorous analysis of the certification factors, as required by both the United States Supreme Court and this court so as to permit meaningful appellate review, the appellate court is not required to assume that the trial court has made all the necessary findings and conclusions to support its decision. In these cases, a court may remand for further findings and conclusions in order that the appellate court may conduct a meaningful appellate review. *Gilkey*, 31 Kan. App. 2d at 78.

The defendants argue that the trial court's decision in this case was sufficient to support meaningful appellate review. They argue the court is not required to discuss each and every factor bearing upon whether a class action should be permitted for the fair and efficient adjudication of controversy, citing *ND Human Rights Coalition v. Bertsch*, 697 N.W.2d 1, 4 (N.D. 2005). It is important to note that the *Bertsch* court was specifically referring to a list of 13 additional factors found in their statute concerning the fair and efficient adjudication of the controversy rather than simply the factors at issue in this case. 697 N.W.2d at 4.

The Ohio Court of Appeals similarly found that if the trial court finds that one of the prerequisites is not present, the court need not continue in its rigorous analysis as the inquiry into class certification is at an end. However, Ohio trial courts are still encouraged to set forth the factual findings underpinning their decisions in order to provide a solid basis upon which reviewing courts can

determine whether a trial court exercised its discretion appropriately. *Frisch's Restaurant Inc. v. Conrad*, 2005 WL 2562596 (Ohio App. 2005).

See also *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 881, 81 L. Ed. 2d 718, 104 S. Ct. 2794 (1984) ("Nothing in Rule 23 requires as a matter of law that the District Court make a finding with respect to each and every matter on which there is testimony in the class action. Indeed, Rule 23 is carefully drafted to provide a mechanism for the expeditious decision of common questions."); *Stone v. Pirelli Armstrong Tire Corp.*, 497 N.W.2d 843 (Iowa 1993) (district court did not have to make findings of fact on each of the criteria for class certification and could have decided class certification issue on any of the prerequisites, reasoning plaintiff had burden of proving all prerequisites for class action certification, and failure of proof on any one of the prerequisites was fatal to certification); *Folding Cartons, Inc. v. American Can Co.*, 79 F.R.D. 698, 700 n.2 (N.D. Ill. 1978) (after the district court denied class action status based on one prerequisite, the appellate court recognized it was "not necessary to reach a decision on any of the other six prerequisites to maintenance of a class action" under the federal rule).

Further, 4 Newberg on Class Actions § 13:52, pp. 460-61 (4th ed. 2002) provides:

"Even though findings of fact are required, they do not have to be extensive. *Specific findings on each of the major class criteria are not required. Like the federal rule, the Uniform Class Action Rule, while requiring findings of fact, does not mandate a trial court to make findings on each and every criteria listed in the statute.*

"Even in states that do not require written findings, such findings afford courts meaningful review. While appellate courts in such states encourage findings since they greatly facilitate review, an order regarding certification made without findings will be affirmed if there are reasons for the ruling." (Emphasis added.) (Citing *Berry v. Town of Danvers*, 34 Mass. App. Ct. 507, 613 N.E.2d 108 [1993] [Massachusetts appellate courts and their rules of civil procedure do not require written findings on a Rule 23 motion.]).

However, the Manual for Complex Litigation (Fourth) § 21.21 (2004) provides that "[a]fter the hearing, the court should enter findings of fact and conclusions of law addressing *each* of the ap-

plicable criteria of Rule 23. Failure to make such findings may result in reversal or remand for further proceedings after interlocutory appeal under Rule 23(f)." (Emphasis added.)

Thus, the general consensus is that the district court need not make findings of fact and conclusions of law on all of the certification factors if it denies certification. However, the problem in this case is that not only did the trial court's memorandum decision provide very minimal findings of fact and conclusions of law concerning the certification factors, demonstrating the lack of a rigorous analysis, but the method of the trial court's analysis of the certification factors itself is flawed, as discussed below.

In denying class certification on remand, the trial court in this case made its determination solely by comparing the first amended petition with the second amended petition. The court simply posed several questions concerning potential problems that *might arise* with the adequacy of representation, predominance, and superiority factors by comparing the number of claims and parties alleged in the first amended petition with the second amended petition. In so doing, the court failed to perform a rigorous analysis of the K.S.A. 2003 Supp. 60-223 factors as they relate to the proposed class and claims raised in the second amended petition itself.

K.S.A. 60-252 differs from its federal counterpart in that it does not contain a provision that findings of fact and conclusions of law are unnecessary on decisions of motions. See Fed. R. Civ. Proc. 52. But see *Chee-Craw Teachers Ass'n v. U.S.D. No. 247*, 225 Kan. 561, 563, 593 P.2d 406 (1979) (Rule 165 inapplicable to denial of motion to dismiss); *Celco, Inc. of America v. Davis Van Lines, Inc.*, 226 Kan. 366, 368, 598 P.2d 188 (1979) (Rule 165 inapplicable for default judgment); *Heckard v. Martin*, 25 Kan. App. 2d 162, 163, 958 P.2d 665 (1998) (K.S.A. 60-252 not applicable to limited civil actions).

In a case such as this one, where upon remand the trial court fails to adhere to this court's directions, we are reluctant to presume that the trial court made the necessary findings to support its conclusions, regardless whether additional findings have been requested below. We have in this case no analysis of the factors we found to be important in a determination of whether class certifi-

cation is appropriate. We have nothing to review. At the same time, plaintiffs proceeded at their own risk before the trial court in requesting no additional fact findings and conclusions of law, for the appellate court may elect to presume all the necessary findings and conclusions were made by the trial court.

The trial court expressed "concerns" with the adequacy of representation and due process, and whether the proposed class was superior to other methods. The court had *concerns* whether the plaintiffs should omit a sizeable number of potential members in other states and waive reliance on other legal theories advanced earlier to make it easier to get class certification. Further *concerning* the court was the plaintiffs' willingness to give up viable theories of relief on behalf of those who will be excluded and particularly those who may have viable claims in negligence, as they theoretically could end up filing more individual lawsuits than there may be in the class. Finally, the court was *concerned* that, because the unpleaded legal theories may be asserted at any time, the court could "envision" a complex problem on choice of law if that did occur.

Problems exist with the trial court's method of analysis and "concerns." First, the problem with the trial court's minimal analysis concerning the adequacy of representation and superiority factors because certain claims and states were eliminated is illustrated in Comment, *Preserving Adequacy of Representation When Dropping Claims in Class Actions*, 74 UMKC L. Rev. 105 (Fall 2005). In this article, the author states that "dropping claims, which may serve valid strategic aims of the class representative, need not threaten the representative's adequacy, and may instead facilitate the purposes of Rule 23." 74 UMKC L. Rev. at 106.

The author relies in part on the United States Supreme Court's decision in *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, where the United States Supreme Court found that judgment in a class action suit determining that the employer did not engage in a general pattern or practice of racial discrimination against the certified class of employees did not preclude class members from maintaining subsequent civil actions alleging individual claims of

racial discrimination against the employer. In so finding, the Court reasoned in part:

"There is of course no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation. . . . A judgment in favor of either side is conclusive in a subsequent action between them on any issue actually litigated and determined, if its determination was essential to that judgment." 467 U.S. at 874.

Thus, "a class suit appropriately precludes only those claims suitable for class treatment, not the related, individual claims involving individualized facts." 74 UMKC L. Rev. at 120 (citing *Akootchook v. United States*, 271 F.3d 1160, 1164-65 [9th Cir. 2001]). Citing *Matsushita Elec. Industrial Co. v. Epstein*, 516 U.S. 367, 377, 134 L. Ed. 2d 6, 116 S. Ct. 873 (1996), the author concludes:

"Matching the scope of the class action to its binding effect thus protects both the class members and the class opponents, as well as providing predictability to the judgment. Class representatives should therefore not fail the adequacy requirement when they narrow a class suit to satisfy other Rule 23 requirements, provided the expressed intent of the suit does not overreach beyond those claims actually litigated." 74 UMKC L. Rev. at 120.

However, apart from adequacy of representation, the author points out that dropping claims may illuminate other certification problems, such as whether the class suit is " 'superior to other available methods for the fair and efficient adjudication of the controversy,' " *i.e.*, superiority. He suggests that this requirement may be undermined if too many individual suits appear likely to follow, explaining that "[i]f many individual suits are inevitable, the class action serves no superior purpose." 74 UMKC L. Rev. at 124.

As demonstrated in the law review comment, the simple fact that the plaintiffs dropped previously asserted claims does not automatically destroy adequacy of representation or superiority, as only claims actually litigated are precluded from being subsequently raised. See *Cooper*, 467 U.S. at 874. While it may have a negative effect on these factors, this determination must be made after a rigorous analysis of the facts and issues before the court. In this case, the trial court's minimal analysis and speculation was not enough to support its determination that the adequacy of representation and superiority factors were not met as discussed below.

In its memorandum decision, the trial court's assessment of the certification factors was not based on any findings of fact, but on speculation based upon the claims and potential nationwide class alleged in the first amended petition. The trial court did not make any findings that the potential class members resided in states other than Kansas, Oklahoma, Georgia, and South Carolina (plaintiffs allege subsequent discovery showed the majority of the claims were in the south and midwest) or what other viable claims, save one, other potential class members might have. In fact, the one claim mentioned by the trial court, negligence, was specifically addressed by this court in *Dragon I* as a potential choice of law problem in class certification in that the law of negligence differs among the states. 277 Kan. at 789. While it is still possible that the adequacy of representation or superiority prerequisites were not met in this case, the trial court must conduct a rigorous analysis on remand in order to make this determination.

In the same vein, the trial court was concerned that future class action plaintiffs are not bound by the claims in the second amended petition and may raise additional claims either individually or in the context of the class action. The court envisioned a complex choice of law problem if those claims were reasserted and questioned whether the action was manageable.

The problem with this concern is that the trial court failed to analyze the claims and class which was before it in the second amended petition. The trial court engaged in absolutely no choice of law analysis as it related to the four states and claims before it; rather, the trial court denied class certification because a complex choice of law problem *might* arise *if all* of the claims were raised. Even if the court believed that all of the claims were at issue, it failed to conduct a choice of law analysis on all of the claims, despite our remanding for precisely this issue in *Dragon I*.

We are not satisfied that the memorandum decision of the trial court addresses this court's questions and suggestions in *Dragon I*. Moreover, we do not believe that the trial court's memorandum decision provides this court with a basis for meaningful appellate review. Accordingly, we reverse the trial court's denial of class certification and remand for compliance with *Dragon I*. The trial court

should engage in a rigorous analysis of the choice of law issues related to the four states involved in the second amended petition in making its class certification decision. If new claims are subsequently added, the trial court may evaluate them and their impact on choice of law at that time. See *In re Integra Realty Resources, Inc.*, 354 F.3d 1246, 1261 (10th Cir. 2004) ("[A] trial court overseeing a class action retains the ability to monitor the appropriateness of class certification throughout the proceedings and to modify or decertify a class at any time before final judgment.").

In conclusion, the trial court's memorandum decision falls far short of a rigorous analysis of the class certification factors set forth in K.S.A. 2003 Supp. 60-223, and the absence of findings of fact and conclusions of law prevents meaningful appellate review. Therefore, the case must be remanded for further proceedings consistent with this opinion.

The trial judge, herein, Michael Barbara, is no longer a senior judge. Therefore, on remand, the case is assigned to John Bukaty, Senior Judge.

Reversed and remanded for a rigorous analysis of the K.S.A. 2003 Supp. 60-223 certification factors.

LUCKERT, J., not participating.

HILL, J., assigned.