NOT DESIGNATED FOR PUBLICATION

No. 115,537

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROBERT DONOVAN BURTON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; BRENDA M. CAMERON, judge. Opinion filed October 13, 2017. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., HILL and SCHROEDER, JJ.

PER CURIAM:  Robert Donovan Burton was convicted of one count of aggravated indecent liberties with a child. On appeal, Burton contends the district court erred in permitting the State to introduce evidence of his prior sex offense. Specifically, Burton contends the prior sex offense evidence was not relevant to the crime charged and, even if it was, the prejudicial effect of the evidence outweighed its probative value. But our Supreme Court already has determined that a prior sex offense is material to proving whether a defendant committed a current sex offense, and our review of the district

1

court's findings regarding probative value and prejudicial effect is reviewed for abuse of discretion. Applying this standard of review, we find no error.

FACTS

Burton and K.M.'s mother, Dara, worked together as home health care providers for the same client, an elderly man who needed around-the-clock care in his home. For some period of time from December 2012 through January 2013, Dara and her three children began sleeping at the client's home because their home had been robbed. The client slept in his bedroom, Dara's two sons slept in a guest bedroom, Dara slept on a couch in the living room, and K.M., who was 7 years old at the time, slept in a sleeping bag on the floor next to the couch. Burton worked the night shift, so he also would occasionally spend the night at the client's home. When doing so, Burton would sleep on an extra mattress in the living room.

K.M. testified that one night when her family and Burton were all sleeping at the client's home, Burton woke her up and told her to watch a video on his phone that showed people having sex. K.M. put blankets and pillows over her head and refused to watch, but Burton took them away from her and forced her to watch. Burton then removed her pajama pants and underwear and touched her "pee-pee"—her term for vagina—with his fingers in a rubbing motion. Burton exposed his penis to K.M. and asked her if she would suck on it, but she refused. He also asked K.M. if he could "put it in" her, but she did not understand what that meant. Burton told K.M. that "white stuff" came out of his penis. Before K.M. went back to sleep, Burton warned her that what he had done was a secret and she should not tell anyone.

K.M. told her mother about the incident the next morning. Dara remembered K.M. telling her that Burton had showed "[K.M.] stuff on his phone, and that he had tried messing with her." Dara asked K.M. whether K.M. was being nosy by looking at Burton's

2

phone when she was not supposed to be, and K.M. said no. Dara admitted she was hesitant to believe K.M. because Dara did not think Burton was that type of person.

During a regularly scheduled therapy visit on January 3, 2013, between K.M. and her therapist Rachel Assal, K.M. told Assal about what Burton had done to her. Before K.M.'s disclosure, Assal did not know anything about the incident. After the disclosure, Assal told Dara about K.M.'s claims of sexual abuse and advised Dara that, as a therapist, she was required by state law to report K.M.'s claims to the proper authorities. Assal called the state abuse hotline the next day, January 4, 2013, to report K.M.'s claims against Burton.

At some point after the January 3, 2013 therapy appointment, Dara called her best friend, Ellen Rabincoff, and asked her to come to the client's home to lend moral support regarding how to best handle the situation. Rabincoff had known Burton well for almost 18 years, as their parents were friends while they were growing up. When Rabincoff arrived, K.M. told Rabincoff about Burton making her watch inappropriate videos on his phone and touching her vagina. Rabincoff testified that K.M. was in tears and that Rabincoff could hardly understand what K.M. was trying to say. After talking to K.M., Dara and Rabincoff confronted Burton, who denied the accusations. Dara then reported Burton to the police.

Based on Assal's call to the abuse hotline, a social worker from the Kansas Department for Children and Families (DCF) interviewed K.M. at her elementary school on January 8, 2013. Later, a forensic interviewer met with K.M. for a more detailed interview at Sunflower House, a child advocacy center. K.M. made similar disclosures about Burton's actions to DCF and Sunflower House interviewers.

Law enforcement officers obtained a search warrant for Burton's home and seized his cell phone. Through an extraction process, officers determined that the phone had

been used to search for pornography in the early morning hours of December 26, 2012, December 30, 2012, and January 3, 2013. The State charged Burton with one count of aggravated indecent liberties with a child.

Prior to trial, the State sought to introduce evidence of a 2004 case in which Burton pled guilty to attempted rape of a child less than 14 years old, in violation of K.S.A. 2003 Supp. 21-3502 and K.S.A. 21-3301 (Furse). The State argued the prior sex offense was admissible under K.S.A. 2016 Supp. 60-455(d) to prove Burton's propensity to commit sex offenses against underage girls. In response, Burton argued that the prior conviction was irrelevant because of the substantial differences between the facts of the prior and current cases. Specifically, he argued that in the prior case, he was 19 years old and engaged in a consensual sexual dating relationship with F.A.R., who was a pubescent 12-year-old girl at the time. In the present case, however, Burton noted that he was 29 years old and charged with an isolated incident of touching a prepubescent 7-year-old's vagina and showing her pornography. Burton then argued that, even if relevant, the probative value of the prior conviction was outweighed by the prejudicial effect due to both the factual differences and the remoteness of the prior conviction, which occurred close to 10 years prior.

The district court heard the parties' arguments on the motion. After considering the motion and the parties' arguments, the district court judge granted the State's motion to introduce the evidence, stating:

> "Much has changed over the years and this statute and interpreting the statute 60-455, but . . . admission is more the norm than not in allowing this type of evidence.
> "Clearly it was the Legislature's intention to relax the prohibition on this type of evidence.
> "In looking at the factors here, one, is it relevant?
> "In subsection (d), and clearly it is.
> "Is it dissimilar in some ways? Yes, it is.

4

"Is it similar in others, yes, it's not identical. It's very, very rare that they would be identical, but I think it is relevant. I looked at the material fact here whether or not he has propensity, and that is a material fact issue here.

"The final prong, of course, is whether the probative value outweighs the potential for undue prejudice.

"Is it probative? Yes, absolutely.

"Is it prejudicial? Yes, absolutely. Anything the State would put on in their case would be prejudicial.

"Is it unduly so or unfairly so? I find that it is not.

"So the motion to admit evidence pursuant to 60-455 is granted."

Burton testified in his own defense at trial. He denied touching K.M. in any manner or forcing her to view pornography. Burton was questioned about his prior sex offense against F.A.R., which he framed as an "inappropriate relationship with a 12-year-old girl" when he was 19 years old, for which he was convicted of attempted rape. He testified that the relationship was a consensual dating relationship, which ended when F.A.R. became pregnant. The State cross-examined Burton extensively regarding the prior sex offense.

The jury convicted Burton of aggravated indecent liberties with a child, an off-grid crime. The district court sentenced him to a term of life imprisonment, without the possibility of parole for 40 years.

ANALYSIS

In his only issue on appeal, Burton claims the district court erred in allowing the State to introduce evidence of his prior sex offense conviction. K.S.A. 2016 Supp. 60-455(d) exclusively governs the admission of prior-bad-act evidence in sex crime prosecutions and does not include limitations on the purpose for which propensity evidence otherwise can be considered. Rather, K.S.A. 2016 Supp. 60-455(d) broadly "permits evidence of other acts or offenses of sexual misconduct to be admitted in such a

5

prosecution 'for its bearing on any matter to which it is relevant and probative.'" *State v. Prine*, 297 Kan. 460, 475, 303 P.3d 662 (2013) (quoting K.S.A. 2009 Supp. 60-455[d]). As our Supreme Court has recognized in applying K.S.A. 2016 Supp. 60-455(d):

> "In sex offense cases, propensity evidence is material, *i.e.*, has a 'legitimate and effective bearing' on defendants' guilt. See [*State v.*] *Remmert*, 298 Kan. [621,] 627-28[, 316 P.3d 154 (2014)] (prior diversion for sex crime against young girl relevant to guilt in prosecution for sex crime against young boy); see also [*State v.*] *Spear*, 297 Kan. [780,] 789[, 304 P.3d 1246 (2013)] (victim's prior molestation allegations against defendant would have been admissible propensity evidence in later prosecution for aggravated indecent liberties involving same victim); *Prine*, 297 Kan. at 480 (defendant's prior sexual abuse of daughter and younger sister admissible propensity evidence in prosecution for sexual abuse against friend's daughter)." *State v. Bowen*, 299 Kan. 339, 349, 323 P.3d 853 (2014).

The upshot is this: in prosecuting a sex offense, K.S.A. 2016 Supp. 60-455(d) generally permits the State to admit other instances of a defendant's sexual misconduct as bearing on propensity in addition to other grounds on which it might be relevant. That is an exceptionally broad position. With that said, the Kansas Supreme Court has suggested that prior sexual misconduct otherwise admissible under K.S.A. 2016 Supp. 60-455(d) should be excluded if its probative value is substantially outweighed by its impermissibly prejudicial effect. See *Bowen*, 299 Kan. at 349-50; *Prine*, 297 Kan. at 478. The district court's balancing of probative value with undue prejudice involves an exercise of judicial discretion and is reviewed on appeal for abuse of that discretion. *State v. Perez*, 306 Kan. 655, 670, 396 P.3d 78 (2017) (appellate court reviews district court's weighing of probative value and prejudice for abuse of discretion). A judicial action constitutes an abuse of discretion if the action: (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *Bowen*, 299 Kan. at 348.

Burton contends that the district court erred as a matter of law because it did not consider the lack of similarity between the prior and current offenses. But the record reflects that the court considered the parties' briefs and heard extensive argument on the relevant similarities and differences, ultimately concluding that the prior crime was "dissimilar in some ways" and "similar in others." Thus, the district court did not err in failing to fully consider the issues to be weighed.

Burton further contends the district court erred as a matter of law in failing to specifically identify the similarities and dissimilarities. Indeed, to facilitate meaningful appellate review, a district court must make sufficient findings of fact and conclusions of law on issues not submitted to a jury. Supreme Court Rule 165 (2017 Kan. S. Ct. R. 214). A party, however, must object to inadequate findings of fact and conclusions of law to preserve an issue for appeal, by filing a motion invoking the judge's duty under Rule 165, if necessary. Such objections give the district judge an opportunity to correct any alleged inadequacies. See *State v. Seward*, 289 Kan. 715, 720-21, 217 P.3d 443 (2009); see also *Dragon v. Vanguard Industries*, 282 Kan. 349, 356, 144 P.3d 1279 (2006) (litigant must object to inadequate findings of fact and conclusions of law before district court to preserve issue for appeal). Burton did not object to the alleged inadequacy of the district court's findings or attempt to preserve an adequate record for review. Accordingly, Burton has waived this issue.

Burton next contends that the district court abused its discretion in weighing the probative value of his prior sex offense against the potential for undue prejudice. The Kansas Supreme Court has cited with approval several factors for weighing the probative value against prejudicial impact, including:

> "'1) how clearly the prior act has been proved; 2) how probative the evidence is of the material fact it is admitted to prove; 3) how seriously disputed the material fact is; and 4) whether the government can avail itself of any less prejudicial evidence. When analyzing

the probative dangers, a court considers: 1) how likely it is such evidence will contribute to an improperly-based jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time consuming it will be to prove the prior conduct. [Citations omitted].' *United States v. Benally,* 500 F.3d 1085, 1090-91 (10th Cir. 2007) (cited with approval in *Prine*, 297 Kan. at 478)." *Bowen,* 299 Kan. at 350.

Applying the factors in this case suggests that the district court did not abuse its discretion in finding that the probative value of the evidence outweighed the prejudicial effect on Burton caused by introducing the evidence at trial. With regard to the first set of factors relating to probative value, the prior offense was a conviction resulting from a guilty plea about which Burton testified at trial; thus it was clearly proved. With regard to its relevant probative value, Burton points to significant dissimilarities between his prior conviction, in which he engaged in a course of consensual sexual activity with a 12-year-old who became pregnant, and the current incident, in which he engaged in nonconsensual sexual touching of a 7-year-old. However, both sexually offensive acts were committed when Burton was older than 18 years old and the victim was younger than 14 years old. Thus under Kansas law, the victims were similarly situated and unable to consent by law. Burton contends the remoteness in time between the prior conviction and the current offense also makes it less probative. "But the remoteness of a prior conviction generally affects the evidence's weight rather than its admissibility." *State v. Smith*, 299 Kan. 962, 971, 327 P.3d 441 (2014). Third, whether Burton had a propensity to commit a sexual offense against K.M., an underage female, was highly disputed; Burton testified on his own behalf that he did not touch K.M. or show her pornography. Because the evidence in this case was primarily based on K.M.'s testimony (and her statements to other persons) versus Burton's testimony, the evidence of Burton's propensity was the State's only other evidence to corroborate K.M.'s allegations; this factor weighs in favor of admitting the evidence.

With regard to the second set of factors relating to the amount of prejudice Burton would experience if the evidence was introduced, we note that Burton testified about his prior conviction and thus explained to the jury the differences between the two cases that he now urges this court to consider. The State did not present any testimony from the victim or documentary evidence of the prior conviction, so there was no unnecessary extraneous details of the prior crime presented to the jury. See, e.g., *State v. Dean*, 298 Kan. 1023, 1034, 324 P.3d 1023 (2014) (in determining risk of undue prejudice did not outweigh probative value, "court did not admit extensive evidence or graphic detail about the prior conviction"). And presentation of the evidence was not overly distracting or time-consuming.

Ultimately, in weighing the factors above, a reasonable person could agree with the district judge that the probative value of Burton's prior conviction of attempted rape against F.A.R. outweighed the prejudicial effect on Burton, thereby preventing it from being unduly prejudicial. While others may disagree with the district judge, if reasonable persons could agree, then there is no abuse of discretion. *Perez*, 306 Kan. at 670.

Affirmed.