NOT DESIGNATED FOR PUBLICATION

No. 118,725

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DIGITAL OFFICE SYSTEMS, INC.,
*Appellee*,

v.

KYLEE J. BLEIER and R.K. BLACK, INC.,
*Appellants*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed August 24, 2018.
Reversed and vacated.

*Lynn D. Preheim* and *Christina J. Hansen*, of Stinson Leonard Street LLP, of Wichita, for
appellants.

*Eric B. Metz*, *James A. Walker*, and *Derek S. Casey*, of Triplett Woolf Garretson LLC, of
Wichita, for appellee.

Before ARNOLD-BURGER, C.J., ATCHESON, J., and LORI BOLTON FLEMING, District Judge
assigned.

PER CURIAM: Kylee J. Bleier and R.K. Black, Inc. appeal from the district court's
imposition of a temporary injunction order requested by Digital Office Systems, Inc.
(DOS) against them. Bleier and Black argue that the district court abused its discretion by
failing to conduct the required legal analysis to support a temporary injunction order. We
agree. Because the district court failed to consider all five elements of analysis for a

temporary injunction order, we find the district court abused its discretion. The decision of the district court is reversed, and the temporary injunction order is vacated.

FACTUAL AND PROCEDURAL HISTORY

DOS is a technology company that provides digital imaging solutions, along with general information technology services, in and around Sedgwick County, Kansas. DOS is also a licensed dealer and servicer for Ricoh and Konica Minolta, two companies that manufacture copiers and related office equipment. DOS's authorization as a dealer and servicer is limited to nine Kansas counties.

Bleier began work initially with DOS during August 2012 as an account representative and sales executive. Sometime in the fall of 2015, Bleier left DOS and worked as a pharmaceutical sales representative; however, this job lasted only a few months and on February 1, 2016, Bleier again joined DOS as an account representative and sales executive. She remained in this position until August 23, 2017. This second employment period is at issue in this case.

On January 25, 2016, DOS sent Bleier a letter explaining the parameters of her employment, including the terms of her compensation, sales expectations, territory of sales, and benefits programs. Bleier signed this letter and another document entitled, "Protective Covenants," on February 1, 2016. In the protective covenants document, Bleier agreed to the following language:

> "4.    Non-compete after Employment. For two years immediately following the termination of the Company's employment of Employee, by either party and for whatever reason, the Employee shall not, directly or indirectly, as a sole proprietor or as an employee of, owner of any interest in, volunteer for or under contract with another business, engage in the sales or servicing of office copying equipment (including copiers, fax machines and printers) or contracts for servicing copying equipment within a radius

2

of 200 miles from the center of the City of Wichita, Kansas or divert or encourage diversion of business [or] personnel away from the Company."

Bleier later testified that she did, in fact, agree to all the covenants found in the protective covenants document.

During the course of Bleier's second employment with DOS, she was expected to sell to anyone within a designated portion of its nine-county region and to anyone within the region who operated in either law office or production print industries. As part of her sales process, Bleier developed relationships with DOS customers. Bleier testified that the client relationship is the most important tool for a sales representative. She further developed specialized skills in sales of computer and printing equipment and services to law firms and high volume, production printing needs.

Also during Bleier's second period of employment, DOS paid approximately $8,000 over the course of eight months for Bleier to attend five off-site seminars taught by the equipment manufacturers for additional sales specialization in production print products. However, at the end of her employment with DOS, Bleier repaid $1,974.35 for some of the training she received.

Bleier also acquired some knowledge of DOS's customers outside of the clients she managed. Occasionally, sales executives and account representatives would discuss other clients or potential clients within the region. While DOS also took considerable effort to preserve the confidentiality of its pricing and proposals and prevent them from reaching competitors, Bleier possessed such information as a necessary element of her employment.

Sometime in either the spring or summer of 2016, Black approached Bleier about joining its company in a sales position in Oklahoma City, Oklahoma. Black sells copiers

and other related equipment and services and is a direct competitor of DOS. At that time Bleier could not relocate to Oklahoma City. Black again contacted Bleier when a position opened with the company in Wichita. On August 23, 2017, Bleier submitted her letter of resignation to DOS, effective September 1. She thereafter accepted a sales manager position at Black in Wichita on August 28, 2017. As part of her employment, she managed sales representatives who sold copiers and related equipment and services in the same area as DOS. Furthermore, Black sought to sell to more law firms.

After learning that Bleier worked for a competitor, DOS sent a cease and desist letter to Bleier, informing her of the apparent breach of the noncompete covenant and demanding that she cease her employment immediately. The letter further requested that both Black and Bleier acknowledge compliance with its demands in writing. Neither Bleier nor Black responded to the letter.

On September 22, 2017, DOS filed a petition and motion for a temporary restraining order and a temporary injunction with the district court, asserting, among other things, that Bleier breached her noncompete covenant by working for Black in Wichita and in a substantially similar capacity as she was in while working at DOS. On September 25, 2017, the district court granted a temporary restraining order against both Bleier and Black, finding that the verified allegations demonstrated that DOS had suffered and would continue to suffer irreparable harms, injuries, and losses until Bleier complied with the noncompete covenant.

In October 2017, the district court held a hearing on DOS's motion for a temporary injunction. At this hearing, Bleier testified, among other things, about her skills, her knowledge, her employment with both DOS and Black, and the noncompete covenant that she signed. DOS offered the testimony of witnesses, including Brian Staats, a sales manager at DOS, who testified about the company's sales process. Brian Wilbert, one of the company's founders, testified about the nature of DOS's business and its relationships

with its manufacturing partners. After hearing the evidence presented and the arguments of the parties, the district court granted DOS's request for a temporary injunction on November 13, 2017.

Bleier and Black timely filed this appeal.

DID THE DISTRICT COURT ABUSE ITS DISCRETION

BY GRANTING THE TEMPORARY INJUNCTION?

We review the grant or denial of injunctive relief under an abuse of discretion standard. *Downtown Bar and Grill v. State*, 294 Kan. 188, 191, 273 P.3d 709 (2012). "[J]udicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact." *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 169, 298 P.3d 1120 (2013). In particular, we review a district court's findings of fact to determine if they are supported by substantial evidence and are sufficient to support its conclusions of law. See *Brown v. ConocoPhillips Pipeline Co*., 47 Kan. App. 2d 26, 35-36, 271 P.3d 1269 (2012). The party challenging the order granting the temporary injunction bears the burden of proving that the trial court abused its discretion. *Steffes v. City of Lawrence*, 284 Kan. 380, 393, 160 P.3d 843 (2007).

On appeal, Bleier and Black assert that the district court abused its discretion by improperly granting a temporary injunction in DOS's favor. To support this position, Bleier and Black raise five arguments, attacking each of the specific elements DOS is required to prove to be entitled to a temporary injunction. The bulk of Bleier and Black's argument centers on whether DOS adequately established whether it stood a substantial likelihood of success on the merits of the case. Bleier and Black further assert that DOS

failed to present sufficient evidence to support the temporary injunction against Black specifically.

To obtain injunctive relief, including temporary injunctive relief, the requesting party must show (1) a substantial likelihood of success on the merits; (2) a reasonable probability of irreparable future injury; (3) an action at law will not provide an adequate remedy; (4) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; and (5) the injunction, if issued, would not be adverse to the public interest. *Downtown Bar and Grill*, 294 Kan. at 191.

Unfortunately, the district court failed to properly analyze these five factors. In its analysis, the district court identified a formulation of legally comparable factors enumerated in *Wichita Wire, Inc. v. Lenox*, 11 Kan. App. 2d 459, 462, 726 P.2d 287 (1986). The district court listed these factors as (1) a likelihood of success on the merits; (2) the possibility of injury that cannot be remedied by damages; (3) a balance of hardships in that party's favor; and (4) public policy favoring their requested belief. Although the factors outlined in *Wichita Wire* and *Downtown Bar and Grill* differ in their phrasing, they cover pretty much the same legal ground. The problem here is the district court's failure to make findings on several of the criteria common to both *Wichita Wire* and *Downtown Bar and Grill*. As a result, the district court's ruling in favor of DOS is legally insufficient to support a temporary injunction against either Bleier or Black.

The district court first considered whether the DOS noncompete agreement was valid. Assumably, the analysis was related to whether DOS could show a substantial likelihood of success on the merits—the first factor under *Downtown Bar and Grill.* See 294 Kan. at 191. The district court concluded that the January 25, 2016 letter constituted a contract of employment with DOS and also found the protective covenants document to be an ancillary contract supported by sufficient consideration.

The district court then examined whether the protective covenants document was enforceable under the law. By doing so, the district court continued its analysis of the larger first issue—a substantial likelihood of success on the merits—by examining (1) whether the noncompete agreement protected a legitimate business interest of the employer; (2) whether the noncompete agreement created an undue burden on the employee; (3) whether the noncompete agreement was injurious to the public welfare; and (4) whether the time and territorial limitations contained in the agreement were reasonable. The district court applied the factors in *Weber v. Tillman*, 259 Kan. 457, Syl. ¶ 5, 913 P.2d 84 (1996), in its analysis and ultimately found the factors to have been satisfied.

After conducting this analysis, rather than returning to the remaining factors under *Downtown Bar and Grill*, the district court simply ended its analysis and concluded: "This court finds that the elements for a temporary injunction pursuant to K.S.A. 60-901 *et seq.*, as well [as] the element for determining a noncompete agreement is reasonable, as set forth in *Weber v. Tillman* . . . have been met." The district court then issued its specific terms of injunctive relief.

On appeal, this court need not determine whether the district court erred in its analysis of factor one under *Downtown Bar and Grill*. The error was failing to consider the remaining four factors. While there is some small overlap between the *Weber* "subfactors" discussed by the district court and the *Downtown Bar and Grill* factors, the district court specifically failed to analyze whether there was a reasonable probability of irreparable future injury to the movant; whether an action at law would not provide an adequate remedy; and whether the threatened injury to the movant outweighed whatever damage the proposed injunction may cause the opposing party. It might be argued that the final factor—whether the injunction, if issued, would be adverse to the public interest—was considered by the district court in its discussion of whether the noncompete agreement was injurious to the public welfare under the *Weber* "subfactor." Nonetheless,

the failure of the district court to consider all five factors under *Downtown Bar and Grill* is an abuse of discretion.

A district court can abuse its discretion by failing to properly consider the factors on an issue given by a higher court to guide the discretionary determination of an issue or by going outside the framework of or failing to consider proper statutory limitations or legal standards. See *Dragon v. Vanguard Industries*, 282 Kan. 349, 354, 144 P.3d 1279 (2006).

> "Generally, a litigant must object to inadequate findings of fact and conclusions of law to give the trial court the opportunity to correct them, and in the absence of an objection, omissions in findings will not be considered on appeal. [The reviewing] court may still consider a remand if the lack of specific findings precludes meaningful review. [Citations omitted.]" 282 Kan. at 356.

Here, we are unable to conduct a meaningful review of the remaining necessary elements of the temporary injunction order for an abuse of discretion because the district court failed to consider the proper legal standards to reach its decision.

Finally, while the district court issued an injunction against Black, it did not analyze any of the *Downtown Bar and Grill* factors with respect to Black specifically. For the same reasons as noted above, we find the order is insufficient for us to review under an abuse of discretion standard. The district court also failed to consider proper legal standards as to the temporary injunction order issued against Black. This was an abuse of discretion.

In considering the appropriate remedy, we note that this is an appeal from a temporary injunction order. We therefore reverse the district court's order and vacate the temporary injunction order. The parties may request further temporary injunctive relief

from the district court if warranted, which would be subject to further legal analysis by the district court.

Reversed and vacated.