(75 P.3d 284)
No. 88,640

STATE OF KANSAS, *Appellee/Cross-appellant*, v. ROBERT EUGENE JEFFREY II, *Appellant/Cross-appellee*.

Opinion filed August 29, 2003.

*Jessica R. Kunen*, of Lawrence, for appellant/cross-appellee.

*Autumn L. Fox*, of The Law Office of Autumn L. Fox, of Abilene, for appellee/cross-appellant.

Before KNUDSON, P.J., BEIER and MALONE, JJ.

KNUDSON, J.: Robert Eugene Jeffrey II appeals his conviction for aggravated indecent liberties with a child, raising both trial and sentencing issues. The State cross-appeals, contending there were no substantial and compelling reasons to support the trial court's departure sentence.

We affirm in part and reverse in part, vacate Jeffrey's conviction, and remand to the trial court for a new trial.

S.F., born on August 31, 1991, and M.J., born on December 7, 1992, are playmates whose families live next door to one another in Chapman, Kansas. M.J. is the defendant Robert Jeffrey's son. It is not clear from the record when the alleged crime was committed. We do know it was a single incident occurring sometime between August 24, 1998, and May 27, 1999. Apparently, the accusations did not come to light until May 2000. At trial, S.F. testified she and M.J. were playing in the basement of the Jeffrey residence when Robert Jeffrey told her to take off her clothes or he would shoot her. S.F. said after both children and Jeffrey took off their clothes, Jeffrey had her sit on his lap and placed his penis between the cheeks of her buttocks. The jury found Jeffrey guilty as charged; the trial court imposed a downward dispositional sentence with 60 months' probation. Additional facts and circumstances will be presented as we consider the issues raised in this appeal.

*Prosecutorial Misconduct—S.F.'s Pretrial Interviews*

S.F. was interviewed by the prosecuting attorney, Eric Rucker, a few days before the jury trial commenced in November 2001. In that interview S.F. told Rucker there was no penetration by Jeffrey when she was forced to sit on his lap. That was also S.F.'s testimony at trial. Rucker did not disclose the content of his interview with S.F. to the defendant's attorney.

Jeffrey contends previous interviews given by S.F. and detailed in written reports of Jerry Davis, the investigator of the Dickinson County Sheriff's office, intimated there had been penetration. Those reports had been provided to the defense under a discovery order or the open door policy of the Dickinson County Attorney's office. On appeal, Jeffrey contends Rucker's failure to disclose the content of S.F.'s interview undermined the defendant's theory of the case. In his appellate brief, Jeffrey explains:

"[T]he prosecutor was clearly aware that S.F. changed her statements from the claim that Mr. Jeffrey's penis went into her 'butt', to the claim that it did not go into her 'butt,' but went up her back. . . . A major theory of the defendant's case was that there was no sign of healed injury to the anus area up in the anal cavity in either S.F. or [M.J.]. Therefore, when the state's victim changed her story to say there was no penetration, the defendant was prejudiced."

Jeffrey's claim of error is not persuasive. There was no objection at trial to S.F.'s testimony, and the perceived violation of the discovery order issue was not presented to the trial court until posttrial motions were filed. We conclude the issue has not been properly preserved for appeal. See K.S.A. 60-404; *State v. Barksdale*, 266 Kan. 498, 511, 973 P.2d 165 (1999).

Even considering the merits of Jeffrey's claim, he has failed to sustain his burden to prove error has occurred. There is no discovery order that required the State to produce the content of oral interviews with witnesses, and the evidence referred to is not clearly exculpatory. S.F.'s previous accounts of what had occurred indicated Jeffrey's penis had been "in her buttocks," "in [her] butt," "up her butt," and that Jeffrey had "tried to put his penis in her." We do not find S.F.'s statement to Rucker and testimony at trial to be at odds with her previous interviews with Investigator Davis.

As observed by the trial court in its consideration of Jeffrey's posttrial motion for new trial, prejudice to the substantive rights of the defendant has not been shown. Jeffrey was not charged with sodomy; he was charged with aggravated indecent liberties. In addition, the defense came to the trial well-armed to refute any claim of penetration. Finally, Jeffrey's trial counsel took full advantage of the opportunity provided to show discrepancies in S.F.'s several statements compared to her trial testimony. We conclude there has been no showing of trial error.

## Evidence of Prior Crime

Jeffrey has been convicted of an animal abuse charge in the Dickinson County District Court, case number 00 CR 233, for killing T.S.'s dog on April 2, 2000. T.S. is a neighborhood friend of S.F. and M.J. He knew Jeffrey had shot and killed his dog with a BB gun.

In May 2000, T.S. was ostensibly told by S.F. and M.J. of the incident in the Jeffrey basement. T.S. reported what he had been told to his sister; she in turn told their father. Their father then called S.F.'s father. This ultimately led to the Dickinson County Sheriff's Office being notified and an investigation undertaken.

Jeffrey's theory of defense was in part that T.S. had ample motive to lie or distort what S.F. or M.J. had told him. Thus, Jeffrey decided to seek admission of evidence from the animal abuse case to establish T.S.'s motive to lie. Immediately before trial, the parties entered into the following stipulation:

"COMES NOW the State through Eric Rucker and the Defendant Robert E. Jeffrey II, and informs the court that they stipulate that the events in Dickinson County Case Number 00 CR 233 are admissable [sic] in the case at bar.

"FURTHER, the defendant has been counseled that without his agreement no prior evidence of a wrong could be introduced as evidence without a specific finding by the court pursuant to K.S.A. 60-455. The defendant understands the same and does believe that the facts in case 00 CR 233 are Res Gestae in the case at bar."

During the prosecutor's opening statement, photographs of the dead dog were shown to the jury over objection of the defendant. During the State's direct examination of the dog's owner, the State

elicited testimony over objection as to the dog's docile nature. In cross-examination of Jeffrey, the prosecutor asked him why a plea of not guilty was entered to the dog charge if he felt remorseful as he testified during direct examination. Although initially an objection was made to this line of inquiry, Jeffrey's trial attorney withdrew the objection; thus, this point is not preserved for appeal. See K.S.A. 60-404; *State v. Barksdale*, 266 Kan. at 511.

Our standard of review is abuse of discretion. *State v. Lumley*, 266 Kan. 939, 950, 976 P.2d 486 (1999). Judicial discretion is abused when the trial court's action is arbitrary, fanciful, or unreasonable. 266 Kan. at 950.

Before accepting the parties' stipulation, the trial court inquired of Jeffrey personally: "And it is your desire that you stipulate and that the evidence contained in the entirety of the case file 00 CR 233 is in fact admissible in this case?" Jeffrey responded: "That's correct."

A defendant may not invite error and then complain of the trial court's action on appeal. *State v. Saleem*, 267 Kan. 100, 109, 977 P.2d 921 (1999).

Additionally, the photographs shown to the jury in opening statement were not made part of the record on appeal. We conclude Jeffrey has failed to meet his burden to designate the record for this court's review as to the use of the photgraphs. See *State v. Moncla*, 262 Kan. 58, 68, 936 P.2d 727 (1997).

Finally, we agree whether the dog was docile was not relevant. Jeffrey admitted shooting the dog, and he made no contention that the dog was vicious. However, the error can hardly be considered as prejudicing Jeffrey's substantial rights. No reasonable juror would infer that the defendant's actions in the dog case had probative value as to his state of mind or conduct in this criminal proceeding. We conclude the error was harmless. See *State v. Clark*, 263 Kan. 370, 376, 949 P.2d 1099 (1997).

*Admission or Exclusion of Other Evidence*

Jeffrey next contends the trial court erred when it admitted police reports of Investigator Davis' interviews with S.F. over his objections. Specifically, he argues the reports are inadmissible hear-

say used to bolster the credibility of State witnesses. This assertion fails.

First, as the State duly notes, Jeffrey did not raise these grounds below. Jeffrey's objections to the admission of the interview reports were based on the best evidence rule. Hence, this issue is not properly before this court. See *State v. Crume*, 271 Kan. 87, 98, 22 P.3d 1057 (2001).

Moreover, the reports do not constitute inadmissible hearsay. Investigator Davis and S.F. testified at trial. Therefore, the reports are admissible under K.S.A. 2002 Supp. 60-460(a) as prior statements of testifying witnesses. Any claims the reports were admitted to bolster credibility are equally unfounded. The trial court expressly stated the reports were being admitted to assist the jury in "understanding those discrepancies" in S.F.'s stories, something Jeffrey's counsel admitted at trial there were many. The trial court did not abuse its discretion in admitting the reports.

Jeffrey alternatively contends the police reports of Investigator Davis' interviews with M.J. should have been admitted. This also fails. Jeffrey cannot meet his burden of demonstrating abuse of discretion on the part of the trial court because Jeffrey did not object to the exclusion of these reports at trial, creating invited error. See *Saleem*, 267 Kan. at 109; *Lumley*, 266 Kan. at 950.

Jeffrey also argues the trial court erred in admitting testimony from Investigator Davis that his two pretrial interviews with S.F. were not different in any material way. Jeffrey's objection at trial was that a witness is not permitted to pass on the credibility of evidence. See *State v. Struzik*, 269 Kan. 95, 99, 5 P.3d 502 (2000). The testimony of Investigator Davis was as follows:

"Q. You've had the opportunity to compare the two interviews, have you not?
"A. Yes, I have.
"Q. And you've just testified that they were similar. Did they differ in any material way regarding what happened between she and Bob Jeffrey in that basement?
. . . .
"A. It's similarly along the same lines. It was basically the same thing she had told me before."

We are unable to tell from this brief exchange whether the prosecutor's ambiguous questions were objectionable or not. We can-

not ascertain whether the thrust of his questions were directed to Davis' skill in producing accurate reports of interviews or, alternatively, directed to the consistency of S.F.'s statements. We know that both were concerns of the defendant in this trial. Under these circumstances, we are disinclined to hold the trial court abused its discretion in admitting the evidence. In the alternative, we would hold the error, if any, to be harmless as both issues were fully explored at trial and S.F.'s written statements were admitted as exhibits for the jury to consider. "[E]rrors that do not affirmatively cause prejudice to the substantial rights of the complaining party do not require reversal when substantial justice has been done. [Citation omitted.]" *State v. Clark*, 263 Kan. 370, 376, 949 P.2d 1099 (1997).

## Prohibiting Objections During Closing Arguments

The trial court ordered counsel not to object during closing arguments; the court would "handle the closing argument." We turn to the record and the State's closing argument to understand what transpired.

"MR. RUCKER: Thank you, Your Honor. Ladies and gentlemen of the jury, no cameras or videotape was rolling when Robert Jeffrey told [S.F.] to get undressed in the basement. What we have instead is the eyewitness testimony of the son of the defendant, which was given to you through the interview of—

"MS. BARNES-POINTER: Objection, Your Honor. That's a misstatement of the facts of the case.

"THE COURT: Overruled.

"MR. RUCKER:—which was given to you through the interview of Investigator Jerry Davis, and we have eyewitness testimony of the victim, [S.F.].

"Each of us in this life who are fortunate have but one first sexual experience. Dare to say almost every person remembers with some detail the facts and circumstances surrounding their first sexual experience with an adult of the opposite sex. Each person may not remember every little detail about where you were first touched—

"MS. BARNES-POINTER: Your Honor, I'm going to object. This is testimony and not argument of the facts of the case.

"THE COURT: There will be no further objections. I will handle the closing argument. Mr. Rucker, you will deal with the facts of this case only. Proceed."

It appears to us that both objections lodged by Jeffrey's trial attorney were reasonable. M.J. was not a witness at trial; it was

improper for Rucker to refer to eyewitness testimony given by M.J. We conclude the trial court probably erred in overruling the defendant's objection. We note, however, the prosecutor recovered and rephrased his argument in an appropriate manner. The second objection, although perhaps not as legally specific and persuasive as the first, cannot be said to have been interposed to obstruct or for some other improper purpose. Our point is this: nothing that occurred in the initial phase of the closing arguments supports or justifies the trial court's extraordinary action in prohibiting further objections.

We recognize "[t]he trial judge is not merely a moderator, but is the governor of the trial." *State v. Gadelkarim*, 256 Kan. 671, 676, 887 P.2d 88 (1994). And certainly a trial judge may reasonably control the duration and scope of closing arguments. See *Herring v. New York*, 422 U.S. 853, 862, 45 L. Ed. 2d 593, 95 S. Ct. 2550 (1975). However, the trial judge's duty to govern does not permit interference with the traditional functions of an attorney in a criminal proceeding. As stated in *Herring*, "[i]n a criminal trial, which is in the end basically a factfinding process, no aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment." 422 U.S. at 862.

We would suggest equally important is the opportunity to lodge contemporaneous objections to unfair, prejudicial argument by the other party. In fact, counsel's opportunity has been held to ordinarily be a predicate duty to preserve for appeal an issue of improper statements made in closing argument. See *State v. McCray*, 267 Kan. 339, 344-45, 979 P.2d 134 (1999).

We are also concerned that while both parties were prevented from lodging objections, the trial court admonished the parties in response to an objection by defense counsel in the initial stages of the arguments. This action carried a real possibility the jury would perceive this action as necessary because of the conduct of Jeffrey's trial counsel. Indeed, it appears from the trial court's comments at the hearing upon Jeffrey's motion for a new trial, that that is precisely what motivated the judge. He explained:

"It became painfully obvious to the Court at that point in time that we were going to have a difficult time getting closing arguments done. It is not the intention of this Court to deny this defendant of his right to counsel. This Court has a duty to monitor closing arguments."

We next turn to the balance of the State's closing argument. Jeffrey contends there are several instances of improper statements that prejudiced his right to a fair trial.

The prosecutor argued to the jury, "[S.F.] did her interviews and she did her testimony without notes. Something even professional law enforcement officers, trained sex nurses, MDs, social workers, lawyer [*sic*] have a very, very difficult time doing in this court-room." Clearly, this argument was not within the evidence and presented to bolster S.F.'s credibility as a witness.

The prosecutor made the following comments regarding M.J.'s questioning by Investigator Davis:

"In essence, [M.J.] was hearing Investigator Davis say, hey, look, I'm your friend. I'm here to protect you. I know your dad has told you you're not supposed to talk to anyone or me about shooting the dog or getting naked with your best friend down in the basement, and I know your dad has told you he may go to jail if you talk to me, but forget about that and talk to me anyway."

The prosecutor continued: "[I]t can be argued that [M.J.] wished that anyone else would tell. Someone help me bear this burden, at least help me."

Within the context of this trial, M.J. was portrayed by the prosecution as a victim of Jeffrey's crime. In *State v. Kleypas*, 272 Kan. 894, Syl. ¶ 83, 40 P.3d 139 (2001), the court held: "[P]rosecutorial comments referring to what the victim was thinking are improper because they ask the jury to speculate on facts not in evidence. It is improper for a prosecutor to create an 'imaginary script' in order to create and arouse the prejudice and passion of the sentencing jury."

M.J. did not testify at trial. The prosecutor's comments are outside the scope of the evidence presented and do not constitute fair and vigorous argument we will condone. There was no evidence presented that Jeffrey told his son not to talk to the authorities about "getting naked with your best friend down in the basement," and M.J. did not testify at trial.

The prosecutor also commented on the credibility of S.F. when he stated: "[S.F.] is representative of children her age in this—in this regard. She consistently tells the truth the same way."

And later: "The conviction of Robert Jeffrey for the crime of aggravated indecent liberties with a child will result because two small and I believe courageous children told the truth . . . ."

We do note the trial court did attempt to cure the prejudice of the later argument, instructing the jury immediately that "it is not Mr. Rucker's personal opinions that matter in this case, it is the law and the evidence."

Rucker also further emphasized the importance of M.J.'s corroboration of S.F.'s testimony, telling the jury:

"[I]t's a situation no child should ever have to face, yet that was the very situation [M.J.] found himself in. And who put him there? The defendant. It was Robert Jeffrey that put [M.J.] in that chair having to answer questions and it was the behavior of Robert Jeffrey that caused his son to have to face that situation."

This argument is improper as outside the evidence and could only have been intended to arouse the passion and prejudice of the jury.

"An error of constitutional magnitude is serious and may not be held to be harmless unless the appellate court is willing to declare a belief that it was harmless beyond a reasonable doubt. Thus, before we may declare the error harmless, we must be able to declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial. State v. Bell, 266 Kan. 896, 920, 975 P.2d 239, cert. denied 528 U.S. 905 (1999)." State v. Thompkins, 271 Kan. 324, 335, 21 P.3d 997 (2001).

A review of the evidentiary record reveals that the evidence presented against Jeffrey was not overwhelming. The State's case was largely based upon the testimony of S.F. and the inconsistent hearsay statements of M.J. In addition, the trial court's blanket prohibition against objections during closing argument effectively stripped Jeffrey of his right to effective counsel, a violation of his Sixth Amendment protections. Finally, the prohibition led to the above instances of prosecutorial misconduct that went largely unchecked by the trial court. We cannot say the compound error that resulted was harmless beyond a reasonable doubt. Jeffrey's conviction must be set aside and this case remanded for new trial.

Our decision renders moot or improvident consideration of the remaining issues presented by the parties.

Reversed and remanded for new trial.