No. 105,625

STATE OF KANSAS, *Appellee*, v. DONALD RAY DEAN, *Appellant*.

(324 P.3d 1023)

1024

*Deborah L. Hughes*, of Kansas Appellate Defender Office, argued the cause, and *Ryan Eddinger*, of the same office, was on the brief for appellant.

*Lee J. Davidson*, assistant attorney general, argued the cause, and *Derek Schmidt*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

MORITZ, J.: Donald Ray Dean appeals his convictions of two counts of aggravated indecent liberties with a child and one count each of rape, aggravated criminal sodomy, and sexual exploitation of a child. He argues the district court erred in: (1) admitting into evidence his prior conviction for indecent liberties with a child and two home videotapes under K.S.A. 2009 Supp. 60-455; (2) failing to instruct the jury that it could consider K.S.A. 2009 Supp. 60-455 evidence only for its bearing on the sexual exploitation charge; and (3) permitting a witness to read into evidence the factual basis for Dean's prior indecent liberties conviction in violation of his confrontation rights. Dean further contends the prosecutor committed reversible misconduct in his rebuttal closing argument and that his sentence is illegal and constitutes cruel and unusual punishment.

Although we find the prosecutor improperly speculated on facts not in evidence, we find no reversible trial error and affirm Dean's convictions. However, because the sentencing court imposed a mandatory minimum sentence instead of departing to a guidelines sentence after granting Dean's motion to depart, we vacate Dean's sentence and remand for resentencing.

FACTUAL AND PROCEDURAL BACKGROUND

Ten-year-old S.W. participated in classroom personal safety awareness training about good and bad touches. Afterward, S.W. advised her teacher that she and her "grandpa" touched each other in "private places" and it made S.W. uncomfortable. S.W. also said that her grandpa had given her a ring and said he wanted to marry her.

After S.W.'s teacher reported S.W.'s allegations, law enforcement conducted an investigation through which it learned that 57-year-old Donald Ray Dean, who was unrelated to S.W., was the man she referred to as "grandpa." A subsequent search of Dean's home revealed a number of videotapes, including one in which two young girls exposed their genitalia.

The State charged Dean with rape, aggravated criminal sodomy, two counts of aggravated indecent liberties with a child, and sexual exploitation of a minor.

*Pretrial Proceedings*

Prior to trial, Dean filed a motion in limine seeking to prevent the State from introducing evidence of his 1984 conviction for indecent liberties with a child. Shortly thereafter, the State filed notice pursuant to K.S.A. 2009 Supp. 60-455 of its intent to introduce: (1) Dean's 1984 conviction for indecent liberties with a child as well as the factual basis for the conviction contained in the presentence investigation report (PSI); (2) testimony from two adult women, C.R. and A.R., who were the children exposing their genitalia in the video found in Dean's home, about the video and their sexual contact with Dean; and (3) several videotapes allegedly taken by Dean that focused on young girls' knees and clothed genital regions. Further, the State asserted that the version of K.S.A. 60-455 effective April 30, 2009, K.S.A. 2009 Supp. 60-455, governed the admissibility of the evidence rather than the prior version.

After additional briefing and argument, the district court agreed with the State that K.S.A. 2009 Supp. 60-455 applied. It further determined that the evidence in the State's notice was admissible "[n]ot only for those specifically stated material facts being as identified, motive, intent, plan and knowledge and identity, but also as stated in the amendment bearing on any matter to which it is relevant or probative." The district court later clarified its ruling, indicating that while C.R. and A.R. could testify about whether they were the children in the incriminating video, any testimony regarding other allegations arising from Dean's contact with them was inadmissible because of its highly prejudicial nature.

The case proceeded to trial where the following facts were developed.

### The State's Case

Kansas Bureau of Investigation (KBI) Special Agent Jason Larue began investigating the allegations against Dean after the Meade County Sheriff requested the KBI's assistance. Through his investigation, Larue learned that S.W. met Dean through one of her friends, B.B.

Larue interviewed 12-year-old B.B., who indicated that while she referred to Dean as "grandpa," he was actually a family friend. B.B. said she sometimes visited Dean at his home on weekends and at times her friends would accompany her, including S.W. and another girl of about the same age, L.P. B.B. told Larue that Dean had never touched her inappropriately.

B.B. also told Larue that on one occasion she saw Dean and S.W. French kissing. When Larue asked B.B. to describe the kiss, she explained, " '[Dean] had his tongue inside [S.W.'s] mouth.' " But when B.B. later testified at trial, she said she did not know what type of kiss Dean gave S.W.

B.B. showed Larue a birthstone ring Dean had given her, which Larue later learned Dean had purchased for $250. Larue also learned that Dean gave S.W. a "costume jewelry" ring so that S.W. would not feel left out.

After learning that S.W., B.B., and Dean had spray painted graffiti on a local bridge, Larue accompanied S.W. to the bridge and S.W. pointed to graffiti she had painted with B.B. and Dean. Larue took photographs of the graffiti, which included the phrases, "Will you be mine, [Dean]? Yes or no," with the word "Yes" circled, and "[B.B.,] will you be my girlfriend? Yes or No." Photographs of these and additional spray painted phrases were admitted into evidence.

B.B. testified at trial that she, S.W., and Dean sometimes played a card game called "21." Dean would require the game's loser to remove his or her shoes, socks, or shirt. B.B. recalled having to take off her shoes and shirt and that S.W. also removed some of her clothing.

L.P. testified she and S.W. played "[y]ucky games" with Dean. According to L.P., S.W. told her she and Dean had slept naked together.

S.W. testified at trial and identified the ring Dean had given her and also advised that Dean had spray painted the bridge with the phrases,"[B.B.,] will you be my girlfriend? Yes or No," and "I love you, [S.W.]" S.W. testified she spray painted "Will you be mine, [Dean]? Yes or no," and Dean circled "Yes." S.W. could not remember playing any card games with Dean other than slapjack.

S.W. had difficulty recalling details of her physical interactions with Dean. She testified she told her teacher that Dean had touched her "in the wrong place, and [she] was uncomfortable." When requested to do so, S.W. stood up in the witness stand and indicated for the jury where Dean had touched her, pointing to her chest and her crotch. She also told the jury she touched Dean's private part. S.W. testified that Dean used his fingers to touch her "tutu" and that he touched her on the "inside." But on cross-examination S.W. explained that when she said Dean touched her "inside," she only meant he touched her inside her clothing. On redirect, the prosecutor showed S.W. an anatomical drawing of a young girl and asked S.W. if she had "that line," indicating the vaginal area, and asked if Dean "ever [went] right there in that line." S.W. responded yes.

S.W.'s forensic interview, which was played for the jury, contained far more detail about the purported sexual contact between S.W. and Dean. S.W. told the interviewer that Dean had rubbed her bare boobs, butt, and "tutu" with his hand. Using an anatomical drawing, she indicated her "tutu" was her vaginal area and that when Dean rubbed her "tutu" his hand went inside her. She also advised the interviewer that she and Dean had kissed on the mouth and she had kissed his butt and his "wiener" after he pulled it out of his pants. S.W. further explained that she had rubbed Dean's "wiener" with her thumbs and "sperm" came out, which she described as "white and squishy."

Larue also testified about his consensual interview with Dean. Larue said Dean told him that he was a friend of B.B.'s family, that B.B. called him "grandpa" and spent every other or every third

weekend at his house, and that B.B. sometimes brought friends to his home. He further explained that while he met S.W. through B.B., S.W. eventually visited Dean's home without B.B. Dean admitted giving the rings to B.B. and S.W.

Dean also disclosed to Larue that in 1984 he pled guilty to indecent liberties with a child. Over Dean's objection, Larue read into evidence the PSI's "official version" of the factual basis for the charge. The factual basis indicated that Dean's conviction arose from a game he played with four children. Dean blindfolded each child, placed an object in the child's hand and then asked the child to guess what was in his or her hand. Two of the children said the blindfold did not fit securely, allowing them to see that Dean placed his penis in their hands.

Larue also testified that he secured and executed a search warrant on Dean's home after S.W. told Larue that Dean videotaped her on one occasion and that she and Dean watched pornography together. During the search, Larue found approximately 140 videotapes and DVDs, some containing commercially produced adult pornography and others that were clearly homemade. Over Dean's objection, the State played portions of three tapes for the jury.

Two of the videotapes the State played provided only circumstantial evidence supporting the charges (the "evidentiary videos"). The first evidentiary video depicts Dean in a recliner holding an unidentified young girl on his lap with her head resting on Dean's chest. In the video, Dean kisses the girl on the cheek a few times and talks to the person behind the camera.

The State also showed the jury multiple segments from a second evidentiary video. Throughout the video, a man speaks to the videotape's child subjects. Larue testified he believed Dean is the man talking to the children.

The first segment of the second evidentiary video is about a minute in length and shows several women and girls in a park. The person recording the video primarily focuses on the women and girls below the waist. No one speaks during this segment of the recording. The second segment of the second video depicts a young girl in shorts and a bikini top. Dean's voice can be heard asking the girl what she wants to say, then laughing, and at one point

asking the girl to cross and uncross her legs. When the girl complies, the camera zooms in on her genital region and knees.

A third segment of the second evidentiary video depicts a young girl walking around a recreational vehicle (RV) park. No one speaks, but the recorder again focuses on the girl below the waist. A fourth segment of the second video depicts two young girls, one of whom states that she is 9 years old. In this segment, the operator focuses on the girls' knees and genital areas and an unseen male interacts with the girls. The final segment of the second evidentiary video is approximately 2 minutes in length and depicts two young girls sitting on a stone structure with their legs crossed. Dean's voice directs the girls to cross and uncross their legs. As they comply, the camera focuses almost exclusively on the girls' genital areas and crossed legs.

The third evidentiary video, which formed the basis for the sexual exploitation of a minor charge, was recorded approximately 16 years before it was found in the search of Dean's home. Larue identified the man's voice on this third video as Dean's voice. Two portions of the tape depict two young girls exposing their genitalia. Dean suggests poses for the girls and talks to them. Larue testified he was able to identify the two girls depicted in the video as sisters, A.R. and C.R.

A.R. and C.R., now adults, testified at Dean's trial that they recognized themselves in the third video as the children exposing their genitalia. A.R. testified she was approximately 4 or 5 years old when Dean videotaped her, and C.R. testified she was between 4 and 6 years old when videotaped by Dean. C.R. testified she remembered Dean videotaping her and her sister, but she did not specifically recall the instance depicted in the third video.

*Dean's Case*

After the State rested, Dean testified in his own defense and denied that he and S.W. had sexual contact. According to Dean, "I couldn't do that to [S.W]. I love [S.W.]."

Dean testified he was close to B.B.'s mother and thought of B.B. as his grandchild. Dean remembered spray painting the bridge with S.W. and B.B. and claimed that when they painted the bridge

he thought he was dying, so he painted the bridge with the girls so they would remember him. He testified he wanted to spray paint "Would you be my granddaughters forever," but he acknowledged that none of the graffiti included the word "granddaughters." According to Dean, after he wrote the word "girlfriend" he ran out of paint and could not alter the graffiti. Dean admitted he bought B.B. gifts, including a ring, but he said it was because he thought of her as his granddaughter. Dean also admitted to giving a "fake" ring to S.W. so she would not feel left out.

Regarding the videos introduced by the prosecution, Dean testified that while he and his wife regularly videotaped events, he also permitted friends to use his video equipment. He claimed a young boy named "Tony" recorded the video of the girl at the RV park, the young girl in shorts and a bikini top, and the two girls on the stone structure. According to Dean, Tony focused on the girls' genital regions and knees because he was learning how to use the recorder. Further, Dean said Tony videotaped the two girls crossing and uncrossing their legs because Tony's brother, who was about the same age as the two girls, "liked the two girls." Dean either generally denied that he was the man heard speaking on the videos or claimed he could not remember if he spoke to the child subjects. Dean denied taking the video of A.R. and C.R. exposing their genitalia and said he did not know how that video came to be in his home.

### Dean's Conviction and Sentencing

The jury convicted Dean of all charges: rape, aggravated criminal sodomy, two counts of aggravated indecent liberties with a child, and sexual exploitation of a child. Before sentencing, Dean filed a departure motion and a motion arguing that, based on his specific circumstances, the sentences for his crimes constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights. The State argued Dean's sentences were constitutional but, based on recent caselaw, the State asked the court to vacate one of Dean's convictions for aggravated indecent liberties with a child.

The district court rejected Dean's claim of cruel and unusual punishment and granted the State's request to vacate one of Dean's aggravated indecent liberties convictions. Further, the district court found substantial and compelling reasons to depart based on Dean's age, depression, alcohol use, and the length of time since his last conviction. However, the district court refused to depart to the extent Dean requested, instead imposing a sentence of 20 years to life.

Dean timely appealed. This court has jurisdiction pursuant to K.S.A. 22-3601(b)(1) (direct appeal for off-grid crimes).

## ANALYSIS

Dean raises four challenges to his convictions. His first two claims of error focus on evidence admitted under K.S.A. 2009 Supp. 60-455 and the judge's instruction regarding that evidence. Dean also challenges on confrontation grounds the admission of the factual basis for his prior conviction of indecent liberties with a child, and he argues the prosecutor committed reversible misconduct. We address each asserted error in turn.

*The trial court properly admitted Dean's prior conviction, its factual basis, and the two evidentiary videos.*

Dean argues K.S.A. 2009 Supp. 60-455 did not permit the trial court to admit his 1984 conviction of indecent liberties with a child, its factual basis, or the two evidentiary videos. Specifically, he argues the trial court improperly admitted all of this evidence for its bearing on his intent and knowledge when his intent and knowledge were not at issue.

The State argues that under the 2009 amendments to K.S.A. 60-455, the prior conviction and evidentiary videos were admissible to prove Dean's propensity to sexually abuse young girls. Thus, the State reasons the district court properly admitted the evidence for its "bearing on any matter to which it is relevant or probative."

Prior to trial, the State and Dean briefed whether the 2009 amendments to K.S.A. 60-455 governed Dean's trial. The district court ruled K.S.A. 2009 Supp. 60-455 applied to Dean's case.

Generally speaking, K.S.A. 60-455 allows admission of a defendant's prior crimes or civil wrongs in certain circumstances. Before the 2009 amendments to K.S.A. 60-455, such evidence could be admitted only to prove specific material facts, such as intent and plan, at issue in the case. See K.S.A. 60-455 (listing "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident" as potential bases for admission of prior crimes or civil wrongs); *State v. Prine*, 287 Kan. 713, 725-26, 200 P.3d 1 (2009) (*Prine I*). In sexual abuse cases, intent is generally not at issue when the alleged act is obviously criminal. Other material facts, such as absence of mistake and accident, are not at issue when the defendant categorically denies the conduct. See *State v. Prine*, 297 Kan. 460, 464, 303 P.3d 662 (2013) (*Prine II*).

After discussing the limitations of K.S.A. 60-455, this court in *Prine I*, 287 Kan. at 737, observed that evidence of prior crimes and civil wrongs admitted in child sexual abuse cases is "peculiarly susceptible to characterization as propensity evidence forbidden under K.S.A. 60-455." It further opined that modern psychology reveals that propensity evidence is probative for juries deciding the guilt of a defendant accused of a sexual crime against a child and encouraged the legislature to consider making K.S.A. 60-455 "more workable" in child sexual abuse cases. 287 Kan. at 737.

The legislature responded and in 2009 expanded the provisions of K.S.A. 60-455 in certain cases. While in most cases evidence of prior crimes and civil wrongs remains limited to proving specified material facts at issue, in sexual abuse cases evidence of previous "act[s] or offense[s] of sexual misconduct" is admissible for "any matter to which it is relevant and probative," including the defendant's propensity to commit a sex offense. Compare K.S.A. 2013 Supp. 60-455(a)-(b), with K.S.A. 2013 Supp. 60-455(d). See *State v. Spear*, 297 Kan. 780, 787, 304 P.3d 1246 (2013).

Under the 2009 version of K.S.A. 60-455, propensity evidence is admissible in sexual abuse cases as long as it is "relevant and probative." K.S.A. 2009 Supp. 60-455(d). As we explained in *Prine II*, evidence is relevant when it is both material and probative; thus, the question of whether evidence is probative is subsumed by the question of whether the evidence is relevant. 297 Kan. at 477.

Material evidence is evidence that supports a fact in dispute or in issue in the case, and evidence is probative when it has a logical tendency to prove a material fact. 297 Kan. at 477.

Prior to the 2009 amendment, this court held that before admitting evidence under K.S.A. 60-455, a district court must evaluate the probative value of the evidence against the threat of undue prejudice. See 297 Kan. at 478; *State v. Vasquez*, 287 Kan. 40, 49, 194 P.3d 563 (2008). This court has not been asked to resolve whether K.S.A. 2009 Supp. 60-455 requires the district court to conduct the same balancing test, and in the absence of such a request, we have assumed the safeguard remains in place. See *Prine II*, 297 Kan. at 478.

*The district court properly admitted the factual basis for Dean's 1984 conviction for indecent liberties with a child.*

Dean argues that the district court admitted his 1984 conviction solely for its bearing on his intent and knowledge, and because his intent and knowledge were not at issue, the district court improperly admitted his conviction and its factual basis under K.S.A. 2009 Supp. 60-455.

But as the State points out, Dean's argument ignores the trial court's actual ruling. The district court specifically admitted the evidence for "any matter to which it is relevant or probative." And the district court requested briefing on whether K.S.A. 2009 Supp. 60-455 applied—an unnecessary exercise if it intended to admit the conviction only for its bearing on Dean's intent and knowledge. Accordingly, the jury was permitted to consider Dean's conviction for a multitude of purposes, including its bearing on Dean's propensity to reoffend. See *Spear*, 297 Kan. at 789 (finding allegations of prior sexual misconduct would be admissible to prove propensity under amended version of K.S.A. 60-455); *Prine II*, 297 Kan. at 480 (same).

Further, we cannot agree with Dean's suggestion that the district court failed to determine whether the risk of undue prejudice outweighed the evidence's probative value. Although the district court did not discuss on the record its weighing of the probative value of the evidence versus the threat of undue prejudice, it appears

the court conducted such an analysis as it suppressed some potential evidence because of its highly prejudicial nature. Further, the court did not admit extensive evidence or graphic detail about the prior conviction, and we are convinced the risk of undue prejudice did not outweigh the evidence's probative value.

*The district court properly admitted the evidentiary videos.*

Dean also argues that because his intent and knowledge were not at issue, the district court erroneously admitted under K.S.A. 2009 Supp. 60-455 the evidentiary videos focusing on young girls' knees and genital regions and Dean cuddling with a young girl.

The State argued below, in an abundance of caution, that the videos were admissible under K.S.A. 2009 Supp. 60-455. However, on appeal the State contends the videos were not subject to K.S.A. 2009 Supp. 60-455 because they did not concern a prior crime or civil wrong.

When recently faced with a similar issue in *State v. Wells*, 297 Kan. 741, 305 P.3d 568 (2013), this court concluded the State's initial characterization of evidence was "not legally binding on this court." 297 Kan. at 750 (finding evidence not subject to K.S.A. 60-455 because it did not point to specific incident of abuse). Similarly, we are not bound here by the State's initial cautious effort to admit the videos under K.S.A. 2009 Supp. 60-455. The evidentiary videos, while unsettling, were not evidence of a prior crime or civil wrong and, thus, were not subject to K.S.A. 2009 Supp. 60-455. Therefore, we will not address Dean's contentions that the evidentiary videos were improperly admitted under that statute.

*Although the district court issued an erroneous limiting instruction, the instruction was not clearly erroneous.*

Next, Dean argues the district court erred in instructing the jury that "[e]vidence has been admitted tending to prove that the defendant committed a crime other than the present crime charged. This evidence may only be considered solely for the purpose of proving the defendant's intent or knowledge." Dean contends this was error because even if properly admitted, the 60-455 evidence should have been considered only as to the sexual exploitation

charge and not the rape, sodomy, and aggravated indecent liberties charges. Dean acknowledges that because he failed to object to the instruction below, this court can reverse only if the instruction was clearly erroneous. See K.S.A. 22-3414(3); *State v. Williams*, 295 Kan. 506, 510, 286 P.3d 195 (2012) (holding that instruction is clearly erroneous only if this court is firmly convinced jury would have reached different verdict absent erroneous instruction).

Despite issuing a more narrow limiting instruction, the district court admitted Dean's 1984 conviction for any matter as to which it was relevant, including Dean's propensity to sexually abuse or exploit children. When a district court admits evidence of prior sexual misconduct on this broad basis under K.S.A. 2009 Supp. 60-455, it is not required to issue a limiting instruction. See *Prine II*, 297 Kan. at 478-79. Thus, in issuing the limiting instruction here, the district court essentially granted Dean more protection than the law afforded him. Therefore, we reject Dean's argument that the instruction unfairly biased the jury against him.

*Dean waived his Confrontation Clause challenge by failing to timely and specifically object on that basis.*

Next, Dean argues the district court erred in admitting an excerpt from his 1984 PSI regarding his conviction of indecent liberties with a child. The excerpt used information from "[s]tatements, affidavits and interviews" to relay the factual basis for his conviction. Dean argues "statements, affidavits, and interviews" are quintessential testimonial statements and the district court denied him his right to cross-examine the declarants, in violation of the Sixth Amendment.

However, Dean objected below only on the ground that the excerpt contained hearsay. We consistently have held that an objection on hearsay grounds does not equate to an objection on confrontation grounds. See *State v. McCaslin*, 291 Kan. 697, 706-07, 245 P.3d 1030 (2011) (concluding K.S.A. 60-404's timely and specific objection requirement applies even to rights as fundamental as right to confront witnesses); *State v. Bryant*, 272 Kan. 1204, 1208, 38 P.3d 661 (2002) (declining to address defendant's Confrontation Clause argument when defendant objected only based

on hearsay). Thus, Dean's failure to object below on confrontation grounds precludes our consideration of this potentially meritorious argument.

*Although the prosecutor inappropriately commented on facts not in evidence, the error does not justify reversal.*

Dean next argues that two statements made by the prosecutor during his rebuttal closing argument were outside the latitude afforded the prosecutor and were not harmless error. The State appears to concede that one of the statements was inappropriate—arguing the error does not justify reversal—but contends the other statement was not error.

We apply a two-step review to allegations of prosecutorial misconduct. First, we consider whether the challenged comment exceeded the wide latitude of language and manner afforded the prosecutor when discussing the evidence. Second, if the statement was outside these bounds, we determine whether the comment constitutes reversible error. *State v. Brown*, 295 Kan. 181, 210, 284 P.3d 977 (2012). To determine whether error justifies reversal, we examine: (1) whether the misconduct was gross and flagrant; (2) whether the prosecutor's remarks showed ill will; and (3) whether the evidence against the defendant was so direct and overwhelming that the misconduct would not have had much weight in the jurors' minds. See 295 Kan. at 213. The third factor can only override the first two when the State demonstrates " 'there is no reasonable possibility that the error contributed to the verdict.' " *State v. Akins*, 298 Kan. 592, 599, 315 P.3d 868 (2014) (quoting *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 [2011], *cert. denied* 132 S. Ct. 1594 [2012]).

*The prosecutor's comment that Dean was "guilty[,] [g]uilty, guilty, guilty, guilty" was not error.*

In concluding his rebuttal closing argument, the prosecutor commented, "The relevant evidence points in one direction, and that direction is right there, and it's guilty. Guilty, guilty, guilty, guilty." Dean argues that this statement showed the prosecutor's

personal disdain for Dean and his opinion of Dean's guilt, and inflamed the passions and prejudices of the jury.

But when read in context, the prosecutor's repeated use of the word "guilty" was not an expression of the prosecutor's personal belief of Dean's guilt or his disdain for Dean. Instead, the prosecutor made the statement in the context of discussing the evidence and while attempting to refute Dean's assertions that S.W. was not credible.

Further, in concluding his closing argument, the prosecutor stated, "And, it's guilty of Rape, guilty of Aggravated Indecent Liberties with a Child, guilty of Aggravated Indecent Liberties with a Child, guilty of Aggravated Criminal Sodomy, and guilty of Sexual Exploitation of a Child." When read in context, the prosecutor's later comment that Dean was "guilty[, g]uilty, guilty, guilty, guilty" appeared to be a shorthand reference to the conclusion to be drawn from the evidence regarding each of Dean's five charges. See *State v. Mireles*, 297 Kan. 339, 368-69, 301 P.3d 677 (2013) (concluding prosecutor's discussion of evidence coupled with statement regarding defendant's guilt was not error); *State v. Bennington*, 293 Kan. 503, 530-31, 264 P.3d 440 (2011) (holding that prosecutor's statement, when viewed in isolation, might appear to be personal opinion; but when viewed in context of discussion of evidence it was not error).

*The prosecutor inappropriately commented that B.B. had not reported Dean sexually abused her because "it hadn't happened yet," but the error does not require reversal.*

In defense counsel's closing argument, he pointed out that B.B. did not testify Dean sexually abused her, and he suggested that the State's argument that the ring and bridge painting were evidence of grooming was not believable. To counter that point, the prosecutor stated:

"Now, the notion that nothing ever happened with [B.B], well, ladies and gentleman, if it's not reported by [B.B.], I don't know, I don't know why. Quite frankly, I don't have to prove why. She's not the victim in this case. And, there may be all kinds of reasons, but you don't need to concern yourselves with those reasons. They're not in evidence. *It may simply be that it hadn't happened yet, all right?*" (Emphasis added.)

Dean argues that by indicating that his sexual abuse of B.B. "hadn't happened yet," the prosecutor impermissibly appealed to the community interest in protecting society from sex offenders and speculated about facts not in evidence.

The State appropriately disputes the defendant's characterization of the prosecutor's comment that B.B. had not reported the abuse because "it hadn't happened yet" as an appeal to the community interest. But the State does not respond to Dean's suggestion that in making this comment, the prosecutor improperly speculated about facts not in evidence. See *State v. Jeffrey*, 31 Kan. App. 2d 873, 881, 75 P.3d 284 (2003). The State's apparent concession is well taken since the State introduced no evidence indicating Dean ever sexually abused B.B. Thus, the prosecutor clearly speculated in suggesting that Dean's abuse of B.B. simply "hadn't happened yet."

Nevertheless, the prosecutor's error does not justify reversing Dean's convictions. The prosecutor made the single improper statement in the context of appropriately explaining that the State was not required to prove why B.B. did not report any abuse. Further, the prosecutor's remaining rebuttal argument properly focused on the evidence presented and on refuting Dean's contentions.

Additionally, when this single extemporaneous remark is considered alongside the State's evidence, it is clear it did not impact the outcome of Dean's trial. S.W. testified at trial that Dean touched her vaginal area and chest and that she touched his penis, and in her forensic interview she provided additional, consistent detail. Other witnesses and evidence corroborated Dean's sexual interest in S.W. Further, Dean admitted at least some inappropriate actions, including giving rings to S.W. and B.B., and spray painting graffiti on a bridge saying he "loved" S.W. and wanted B.B. to be his "girlfriend," and circling "Yes" when S.W. spray painted "Will you be mine? Yes or no?" Finally, the jury heard evidence of Dean's prior conviction involving inappropriate sexual contact with multiple child victims and of his involvement in the recording of videos focusing on the genital regions of young girls. Under these circumstances, we have no hesitancy in concluding that there was

no reasonable possibility that prosecutor's isolated statement contributed to the verdict.

*The district court imposed an illegal sentence when it departed from jessica's law but failed to impose a guidelines sentence.*

Finally, Dean argues his sentence is illegal because when the district court departed from the standard Jessica's Law sentence of a minimum mandatory 25 years of life imprisonment, it imposed an indeterminate sentence of 20 years to life instead of departing to the sentencing guidelines. The State concedes Dean's sentence is illegal and must be vacated. See K.S.A. 21-4643(d)(1) ("The departure sentence shall be the sentence pursuant to the revised Kansas sentencing guidelines act, . . . , and no sentence of a mandatory minimum term of imprisonment shall be imposed hereunder . . . ."); see also *State v. Spencer*, 291 Kan. 796, 826-27, 248 P.3d 256 (2011) (holding that when court departs from mandatory minimum sentence contained in Jessica's Law, it must depart to the sentencing guidelines grid).

Because Dean's sentence must be vacated and the applicable guidelines sentence imposed, we do not consider his argument that his sentence constituted cruel or unusual punishment. See *State v. Jones*, 293 Kan. 757, 762, 268 P.3d 491 (2012) (finding decision to vacate sentence rendered moot defendant's claim lifetime postrelease supervision constituted cruel and unusual punishment).

Affirmed in part, vacated in part, and remanded with directions.