NOT DESIGNATED FOR PUBLICATION

No. 113,017

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

VIRGL D. DILLARD, JR.,
*Appellant.*

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Opinion filed December 18, 2015.
Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Laura L. Miser*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before MALONE, C.J., HILL and STANDRIDGE, JJ.

*Per Curiam:* Lyon County Deputy Sheriff Heath Samuels noticed Dillard walking along a street in Emporia, Kansas, while he was patrolling the area in late 2013. The deputy pulled his patrol car over to the curb near Dillard, got out, and asked Dillard if he would talk to him. The deputy told Dillard he was investigating a theft at Wal-Mart. The deputy performed a pat-down to check for weapons but found none. They had a brief conversation about the Wal-Mart incident. Deputy Samuels then asked Dillard, "Can I search your pockets?" According to the deputy, Dillard responded, "Go ahead. I have nothing to hide." Deputy Samuels reached into Dillard's right coat pocket and found a set

1

of digital scales. Dillard said, "What? They're going to be clean, I just like carrying 'em." The deputy removed the lid to the scales and observed a white, crystal-like substance on the scale. Deputy Samuels then arrested Dillard.

The State charged Dillard with one count of possession of methamphetamine, a severity level 5 felony, and one count of possession of drug paraphernalia, a class A misdemeanor. The State dismissed the possession of drug paraphernalia charge before trial.

Dillard moved to suppress the scales as the fruit of an illegal stop. Dillard alleged that he initially attempted to walk away from the deputy, but Deputy Samuels commanded him to stop without reasonable suspicion, and then the deputy impermissibly expanded the scope of the *Terry* stop. At the hearing on the matter, both Deputy Samuels and Dillard testified. Samuels testified that he asked Dillard if he could speak with him about a theft that had occurred at Wal-Mart, it was a consensual encounter, and he made no command to Dillard. The deputy testified Dillard was free to leave until he found the scales. Samuels also testified that after the line of questioning about the Wal-Mart incident, he asked Dillard if he could search his pockets and Dillard told him to go ahead, that he had nothing to hide.

Dillard testified that he tried to walk away from the deputy but the deputy blocked his path. Dillard testified he did not feel he was to free to leave. Dillard testified that Deputy Samuels did not ask, but rather said, "I'm going to search you."

The district court denied the motion to suppress after deciding that the deputy's testimony was more believable:

> "So, let's look at what we agreed to here, even though there's a lot of disputed things about the facts. We know it was in the middle of the day. We know it was in a

2

public area. We know no weapons were drawn. We know that the officer asked the defendant if he could talk to the defendant. And we know the officer asked to pat-down and, in fact, did the pat-down. And we know that the officer asked to search and, in fact, did the search. The only question is, is what were the responses to those particular requests for pat down and search. . . .

"We know . . . the officer asked if he could go ahead and search his pockets and the officer said that the defendant consented to the search and, in fact, I don't recall the defendant saying he didn't consent to the search. The defendant just said he thought he couldn't leave because he thought that he was being harassed or otherwise being prevented from leaving.

. . . .

"In any event, I am convinced that since I have to make a credibility finding and make a finding as to whether the search was voluntarily—voluntary and consensual, I believe that it was. The defendant could have said—refused the search, could have said no, could have walked away. The defendant's testimony here today was that he felt like he couldn't, but again, . . . after observing the parties in the courtroom and how they testified and what their actions were before the Court and the basic credibility call that the trial court has to make every day, I'm going to rule that the testimony presented by the officer is more credible than that of the defendant."

Later, the district court summarized its findings in writing:

"(A) That Deputy Samuels had a right to pat down the defendant for officer safety.
"(B) That the disputed facts rest upon the Court making a finding of witness credibility.
"(C) That the Deputy's testimony is more credible [than] the defendant's testimony.
"(D) That the search of the defendant's person was consensual."

Before trial, the district judge noted a continuing objection to the defense relating only to the court's prior ruling on the particular suppression issue raised in Dillard's motion to suppress. At the jury trial, defense counsel lodged an objection at the beginning of Deputy Samuels' testimony. Deputy Samuels' testimony did not change in relevant part. Dillard's testimony did not focus on his consent to search but on the ownership of

3

the coat he was wearing. When asked if he was cooperative when the deputy approached, Dillard stated he was:

> "A. Yes. As cooperative as—I was a little aggravated, but, yes, I was cooperative to the point that I didn't—I wasn't going to run, I wasn't going to fight him or resist him. I was just like, 'Go ahead. I have nothing to hide. Nothing whatever.'
> "Q. Do you remember if he asked if he could pat you down?
> "A. Yes. I think—yes. Well, I'm pretty sure Heath said something—I think, like he said, he patted me down. I though he patted me down on top of the car, but he said I put my arms down. That, to me's, not a big thing because that's not the issue here today, I don't think. I mean, he patted me down twice. I just—the whole point of this today is that the coat wasn't mine. I didn't agree with it, but I'm not going to argue with it."

The jury found Dillard guilty of possession of methamphetamine. The court sentenced Dillard to 18 months in prison.

To us, Dillard contends the digital scales were illegally seized from his person because the search and seizure exceeded the scope of his consent and that the plain feel exception did not apply because the scales were not immediately apparent of criminal activity.

Dillard must overcome a procedure hurdle before we can consider his arguments. K.S.A. 60-404 states:

> "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."

This law generally precludes an appellate court from reviewing an evidentiary challenge in the absence of a timely objection made on the record that is so stated as to make clear

4

the specific ground of objection. See *In re Care & Treatment of Thomas*, 301 Kan. 841, 845, 348 P.3d 576 (2015); *State v. Bowen*, 299 Kan. 339, 351, 323 P.3d 853 (2014). A party may not object at trial to the admission of evidence on one ground and then argue a different ground on appeal. See *State v. Dean*, 298 Kan. 1023, 1035, 324 P.3d 1023 (2014). Constitutional grounds for reversal are generally subject to the same rule, and objections to evidence raised for the first time on appeal are not properly before this court. *State v. Williams*, 299 Kan. 509, 549, 324 P.3d 1078 (2014).

Dillard admits that although he did object at trial to the admission of the digital scales on the theory raised in his pretrial motion to suppress, he did not object to the admission of the scales on the basis that the seizure exceeded his scope of consent at trial.

Instead, Dillard contends that this court should apply both exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal. First, if the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case, we should hear it. Second, if consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights we should rule on the matter. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). In our view, neither exception to the rule applies in this case.

At the hearing on Dillard's motion to suppress, Deputy Samuels testified that he asked Dillard if he could search his pockets and Dillard told him to go ahead, that he had nothing to hide. But Dillard denied the deputy's testimony. The district court acknowledged that the facts were contested and it was forced to make a credibility determination. The district court found that the deputy's testimony was more credible. The court only made a finding that the search was voluntary and consensual. The district court did not make a finding as to the scope of the consent because it was not asked to do so. That issue was not before the court. The district court did not consider whether the scope of the consent was limited in some way by the Wal-Mart conversation. The district

5

court did not make a finding as to how much time passed between the initial conversation and the search of Dillard's pockets.

Further, the scope of the consent was not a question that the jury had to decide. Therefore, the question of law exception to the rule does not apply.

Dillard next contends that consideration of his appeal is necessary to serve the ends of justice and prevent denial of his fundamental rights. In *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009), our Supreme Court stressed the need for evidentiary claims to be preserved by an objection at trial:

> "We stress today the importance of this legislative mandate. K.S.A. 60-404 dictates that evidentiary errors shall not be reviewed on appeal unless a party has lodged a timely and specific objection to the alleged error at trial. Although our past decisions may have relaxed the objection requirement in the evidentiary context, this practice not only has led to confusion as to the standards that should be applied on appeal, but also has de-emphasized the role of counsel at trial and has impaired the gate-keeping function of district courts in this state. [Citation omitted.] More importantly, this practice of reviewing evidentiary questions when no objection has been lodged runs contrary to the legislature's clearly stated intent in K.S.A. 60-404.
> ". . . From today forward, in accordance with the plain language of K.S.A. 60-404, evidentiary claims . . . must be preserved by way of a contemporaneous objection for those claims to be reviewed on appeal."

After *King*, our Supreme Court has "consistently been refusing to review an evidentiary issue without a timely and specific objection even if the issue involves a fundamental right." *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 (2010). In *State v. Richmond*, 289 Kan. 419, 429-30, 212 P.3d 165 (2009), our Supreme Court held that if appellate courts overlook the lack of an objection because it is necessary to serve the ends of justice or to prevent the denial of a defendant's fundamental rights, "these and other caselaw exceptions would soon swallow the general statutory rule" of K.S.A. 60-404. In

6

*Richmond*, the court refused to allow a defendant to object on one ground at trial and then argue a different ground on appeal. 289 Kan. at 429; see *State v. Hollingsworth*, 289 Kan. 1250, 1255-56, 221 P.3d 1122 (2009).

Both the Kansas Supreme Court and Court of Appeals have specifically applied K.S.A. 60-404 to evidence that is alleged to have been illegally seized in violation of a defendant's Fourth Amendment rights. See *State v. Kelly*, 295 Kan. 587, 590, 285 P.3d 1026 (2012); *State v. White*, No. 109,953, 2014 WL 5312873, at *3-4, 8-15 (Kan. App. 2014) (unpublished opinion). Therefore, we will not reach the merits of Dillard's argument.

Affirmed.